STATE v. RICHARD NEVILLE.

(Filed 15 November, 1911.)

1. Appeal and Error—"Recent Possession"—Instructions—Omission to Charge.

When error on appeal is assigned upon the ground that the judge, on a trial for larceny, omitted to charge on the principles of law applicable to the defendant's recent possession, it is necessary for the court to examine the evidence of the State and the defendant, when the question turns upon the nature and legal significance of it; and if it tends either to acquit or convict without the necessity of any special consideration of the probative force of recent possession or of evidence by circumstances, the omission to charge thereon is not error, and a full and explicit instruction upon the doctrine of reasonable doubt is sufficient in the absence of a prayer for more specific instructions.

2. Evidence—Recent Possession.

Upon a prosecution of an indictment for stealing a mule, it was admitted that the mule had been stolen, but the defense was relied on that the defendant was not guilty of the offense; and there was evidence on behalf of the State tending to show that under the guise of trading horses the defendant solicited and had his nephew, younger than he and presumably under his influence, to meet him at a certain place, from which the defendant and his nephew drove in a buggy to a point about three miles distant from the home of the prosecuting witness, from which the defendant went alone and soon returned, bringing the stolen mule, and sent his nephew away with it into another State, suggesting a change of name in case of trouble, and giving him money and a pistol for the purpose of the journey; that eventually the nephew returned without the mule, stating that he had sold the animal on certain terms, and shared the proceeds of the sale with the defendant, returning the money and the pistol the defendant had loaned him: Held, an instruction that under this evidence the jury should consider the recent possession of the defendant after the theft as only a circumstance in passing upon defendant's guilt, was not error of which the defendant can complain. The presumption of defendant's guilt from recent possession after the theft discussed by WALKER, J.

3. Evidence, Circumstantial—Corroborative—Burden of Proof.

When the question of defendant's guilt or innocence of the charge of theft depends mainly on the credit the jury may give the testimony of a State's witness, considered in connection with other evidence in corroboration and of a circumstantial charac-

STATE v. NEVILLE.

ter, and is without complication, it is not required that the judge should charge the jury that each circumstance which formed a link in the chain should be established to their full satisfaction.

### 4. Evidence—Collateral Matters—Harmless Error.

Testimony of a witness who had been convicted of receiving property which defendant was being tried for stealing, as to the contents of a letter he had written the sheriff, without producing the letter, to the effect that he had not stolen the mule, did not tend to prove anything harmful to the defendant, and being collateral to the issue, its admission was not error.

### 5. Evidence—Conversations—Impeachment of Witness.

After the examination of a State's witness who had received property for stealing which the defendant was being tried, to the effect that he and the defendant had conspired together to that end, it is competent in corroboration for another State's witness to testify to a conversation with the first witness in regard to the arrangements he and the defendant had made for the purpose of the theft.

### 6. Instructions — Evidence — Accomplice — Evidence, Weight of— Harmless Error.

It was not prejudicial to defendant for the judge, in his instructions to the jury, to refer to a statement made by the solicitor that he would not ask a conviction for larceny of the defendant upon the unsupported testimony of his confederate, and, besides, a conviction could have been had upon the unsupported evidence of the accomplice, if the jury found that he had told the truth.

APPEAL from *Daniels, J.,* at March Term, 1911, of ALA-MANCE.

The defendant was indicted in the court below for the larceny of a mule, the property of Walter Shepherd. The mule was last seen by its owner the fourth Sunday night in August, at about sundown, and it was not missed from the stable until the next day at about 4 o'clock A. M. He was found by Shepherd several weeks afterwards, near Martinsville, Va., with a saddle belonging to W. L. Spoon and a bridle belonging to the defendant, who lived with Spoon. After the mule was stolen, the defendant left home.

John Cole, a witness for the State, who had been convicted of receiving the mule from the defendant, knowing it to have been

stolen, testified: That the defendant came to him when he was working for one Joe Cobb, and told him that he wanted him to assist in some horse trading. Cole at first said he could not go, but finally assented and it was agreed that he would meet the defendant on the following Sunday, which he failed to do, but they did meet afterwards at Burlington on the night the mule was stolen. They rode in a buggy to a bridge over the creek, which is two miles from the home of W. L. Spoon, the brother-in-law of the defendant and an uncle of Cole, and three miles from the house of the prosecutor, from whose stable the mule was taken. Cole being on unfriendly terms with Spoon, refused to go nearer the house than the bridge, and stopped there to wait for the defendant's return, the defendant having told him that he was going to get a mare and a colt, which he had in Spoon's barn. When the defendant returned, he had a mule, which was identified as the one taken from the stable of Shepherd that night. The defendant told Cole to take the mule and trade or sell it, and he could have all over $50 that he could get for it. The defendant, at the same time, gave him a pistol to carry with him for protection, and $2.50 in money, and suggested that it might not be a bad idea for him to change his name after he had left with the mule, in order that he might not have any trouble. Cole took the mule to Virginia and sold him, receiving $5 in cash and a note for $60. On his return, he told the defendant what had been done and gave him the pistol which had been borrowed, and $2.50 in money. A few days after Cole's return from Virginia the defendant went to see him and told him that a warrant had been issued for him for stealing the mule, and advised him to "hit the bushes." He asked Cole for the pistol, and it was given to him. There was evidence tending to show that the prosecutor traced the mule from his home to the bridge, by tracks which were made both by the mule and the man who had taken him, which tracks were made by the same number of shoes as those worn by the defendant. The defendant introduced evidence tending to contradict the witness for the State and to show that he was not at the bridge with Cole on the night the mule was stolen, nor at any other time, and each side introduced testimony in corroboration

157—38

of its witnesses.   It was admitted on the trial that the mule had been stolen from Shepherd, but the defendant denied that he was the thief, and offered evidence as to his good character.

There was a verdict of guilty, and from the judgment thereon the defendant appealed.

*Attorney-General Bickett and Assistant Attorney-General George L. Jones for the State.*

*Parker & Parker and Long & Long for defendant.*

WALKER, J., after stating the case:  We will have to deal, in this case, largely with the question as to the nature of the evidence and its legal significance, and it is, therefore, necessary to examine the testimony introduced by the State and the defendant, in order to ascertain if, in any view of it, the defendant was entitled, without asking for them, to special instructions upon the law relating to recent possession and circumstantial evidence.   We do not think the case called for specific instructions of the kind defendant now contends should have been given.   The evidence, when properly viewed, tended either to acquit or convict the defendant, without the necessity of any special consideration of the probative force of recent possession or of evidence by circumstances.   The proof on the part of the State, briefly stated, was that the defendant and Cole, his nephew, it must be understood, being younger than he was and naturally under his influence, had agreed, at the defendant's solicitation, to meet at a certain place for the purpose of trading horses, but really with the design of stealing the mule, as the gravely suspicious circumstances strongly indicate.   They met in Burlington, according to agreement, or by accident, which makes no difference, and drove in a buggy to the bridge over the creek two miles from W. L. Spoon's and three miles from the prosecutor's home.   There was evidently a conspiracy to steal the mule, and that would seem to have been the sole object of the journey, the swapping of horses being a mere sham or pretense, as the jury apparently found it to be.   The defendant left John Cole, the State's witness, and went to W. L. Spoon's home, where he got a saddle and bridle.   He then went to the stable of the prosecutor and got the mule and rode him to the

meeting place at the bridge, where he told Cole that he had swapped the colt for the mule. He then sent Cole on his way to Virginia with the mule, for the purpose of selling or trading him, armed him with a pistol for protection and supplied him with money for the journey, and when he returned, after the sale of the mule, he received a part of the money and the pistol from Cole.

Upon this statement of the facts, we do not see how the defendant could have been benefited by a charge from the court as to the weight which they should give to the fact of recent possession. If Cole told the truth and the jury believed him, the possession of the mule by the defendant was about as recent as it was possible for it to be; but the judge, instead of instructing the jury that, owing to its nature, the law raised a presumption of guilt from such a possession, he told the jury that they should consider it as only a circumstance, in passing upon the defendant's guilt, for he nowhere charged the jury that there was any presumption, either of law or fact, as to the defendant's guilt. This charge was much more favorable to the defendant than it would have been if the court had told the jury, in accordance with the rule of law, that special weight should be given to the fact of recent possession. The charge is sustained by the case of *S. v. Hullen,* 133 N. C., 656, in which the Court said: "Recent possession of stolen property has always been considered as a circumstance tending to show the guilt of the possessor on his trial upon an indictment for larceny. It is not necessary that we should here draw any nice distinction concerning the presumptions of guilt based on recent possession as being strong, probable, or weak, because the court in its charge, to which there was no exception, instructed the jury that the recent possession of the defendant was only a circumstance to be weighed by them in passing upon his guilt, and this charge is sustained, we believe, by all the authorities. *S. v. Graves,* 72 N. C., 482; *S. v. Watts,* 82 N. C., 657; *S. v. Jennett,* 88 N. C., 665; *S. v. McRae,* 120 N. C., 608."

The rule in regard to recent possession of stolen goods was thus stated in *S. v. Graves,* 72 N. C., 482, by *Chief Justice Pearson:* "The rule is this: 'When goods are stolen, one found

in possession so soon thereafter that he could *not have reason-
ably got the possession unless* he had stolen them himself, *the
law presumes* he was the thief.' This is simply a deduction of
common sense, and when the fact is so plain that there can be
no mistake about it, our courts, following the practice in Eng-
land, where the judge is allowed to express his opinion as to the
weight of the evidence, have adopted it as a rule of law, which
the judge is at liberty to act on, notwithstanding the statute
which forbids a judge from intimating an opinion as to the
weight of the evidence." It is said in that case that this pre-
sumption of law is subject to some qualifications, depending
upon the recency of the possession and the other facts and cir-
cumstances of the particular case. We need not decide whether
the presumption of guilt was strong or weak in this case, as a
matter of law, as the judge simply gave to it the force and effect
of a bare circumstance against the defendant, to be considered
by them in passing upon the question of his guilt or innocence.
In *S. v. McRae,* 120 N. C., 608, it was held that the presumption
of guilt arising from recent possession of stolen property is
strong, slight, or weak, according to the particular facts sur-
rounding any given case, and the cases are very rare in which
the presumption of guilt can be held, as matter of law, to be
strong, though the presumption in this case is stronger than
usual, owing to the other facts and circumstances, as the posses-
sion of the defendant, when first discovered by Cole, was very
recent after the theft had been committed, and the circumstances
of the case surrounding it tended very strongly to convince a
reasonable man that the defendant was the thief.

It is unnecessary, though, to consider this question any fur-
ther, as the charge of the court was as favorable to the defend-
ant as he had a right to expect; nor do we think it was necessary
for the court to charge specially as to the rule in regard to cir-
cumstantial evidence. There was no chain of circumstances in
this case which required the court to tell the jury that each cir-
cumstance which constituted a link in the chain should be estab-
lished to their full satisfaction. A chain is no stronger than its
weakest link, it is true; but there is no series of facts in this
case necessary to be considered by the jury in order to convict

the defendant. The case was without complication and depended mainly upon the credit which the jury should· attach to the testimony of John Cole, the witness for the State, when considered in connection with the other evidence in the case. In *S. v. Adams,* 138 N. C., 688, we said: "No set of words is required by the law in regard to the force of circumstantial evidence. All that the law requires is that the jury shall be clearly instructed that unless after due consideration of all the evidence they are 'fully satisfied' or 'entirely convinced' or 'satisfied beyond a reasonable doubt' of the guilt of the defendant, it is their duty to acquit, and every attempt on the part of the courts to lay down a 'formula' for the instruction of the jury, by which to 'gauge' the degrees of conviction has resulted in no good." These are the words used by *Chief Justice Pearson* in *S. v. Parker,* 61 N. C., 473, which we quoted and approved in the *Adams case,* as "they present in a clear and forceful manner the true principle of law upon the subject."

There are some questions of evidence in the case, which we will briefly consider. The witness John Cole was permitted to refer to the contents of a letter, written by him to the sheriff, without the letter being produced and offered in evidence. He stated that, in the letter, he said to the sheriff that he had not stolen the mule. This did not tend to prove anything prejudicial to the defendant, and, besides, it was collateral to the issue, and the contents of the letter could be shown without producing it. *S. v. Ferguson,* 107 N. C., 846; *S. v. Sharp,* 125 N. C., 631. What Joe Cobb, a witness for the State, testified as to his conversation with John Cole, in regard to the arrangements he had made with the defendant, was corroborative of Cole's evidence, and was, therefore, competent, Cole having been previously examined as a witness. *S. v. Freeman,* 100 N. C., 434; *S. v. Maultsby,* 130 N. C., 664. In *Freeman's case, supra,* it is said: "This is in consonance with adjudications in this State, which, whenever the witness is impeached and in whatever manner, even if it is done in the cross-examination, permits his credit to be sustained by proof of declarations made to others similar to the testimony given in and assailed, and these may be proved by the witness who made them."

It seems that the solicitor, in the course of the trial, had stated that he·would not ask the jury to convict upon the sole and unsupported testimony of John Cole, who was an accomplice, and the judge repeated the remark of the solicitor in his charge to the jury, and the defendant entered exception thereto. We do not see how this was prejudicial to the defendant, even if it was error, for the jury could properly convict upon the unsupported testimony of John Cole, if they found that he had told the truth in regard to the matter, even though he was an accomplice of the defendant. The judge virtually told the jury, by referring to this remark of the solicitor, that they should not convict the defendant unless they believed that John Cole's story of what had occurred between him and the defendant, and as to what he saw at the bridge, had been supported by other evidence.

The other exceptions are without merit, and, besides, the rulings of the court were harmless, if erroneous. We have carefully reviewed the entire record, including the great volume of evidence sent up to this Court, by question and answer taken down by and recorded by a stenographer, and have failed to find any error committed by the court in the trial of the cause.

No error.