STATE v. NUNN OXENDINE, ARCHIE RANSOM AND HILTON
OXENDINE.

(Filed 1 December, 1943.)

**1. Receiving Stolen Goods § 2—**

In a criminal prosecution for receiving stolen goods, C. S., 4250, the test of felonious intent is whether the prisoners knew, or must have known, that the goods were stolen, not whether a reasonably prudent person would have suspected strangers calling at a very early morning hour.

**2. Receiving Stolen Goods § 6—**

Where three defendants bought goods, paying full value, about 2 a.m. from two strangers, who represented that they must dispose promptly of the merchandise from their business because both had been called to the armed forces and one defendant promptly admitted all the facts to the officers while the other two first denied and then admitted the purchase, the State's witness who accompanied the thieves saying on cross-examination that the accused persons had no knowledge of the theft, the element of *scienter* is wanting and demurrer should have been sustained.  C. S., 4643.

APPEAL by defendants from *Bobbitt, J.,* at August Term, 1943, of SCOTLAND.

Criminal prosecutions tried upon indictments charging each of the defendants in separate bills with receiving goods and chattels, specifically described and valued, the property of Leo Smith, knowing the same to have been feloniously stolen or taken in violation of C. S., 4250.

By consent, the three cases were consolidated and tried together, as they all grow out of sales made on a single trip, under similar circumstances and in close succession.

The record discloses that on Sunday night, 4 April, 1943, two escaped convicts and one James Williams broke into Leo Smith's store in Scotland County and stole a quantity of merchandise, including flour, sugar, canned goods, cigarettes, tobacco and eggs. They put the property in a stolen Chevrolet automobile and drove a distance of 25 or 30 miles over into Robeson County, first stopping and making a sale at some woman's house, and then arrived at the home of Nunn Oxendine, a tenant farmer, whom Williams knew, about 1:30 or 2:00 a.m. The two convicts who were well dressed in civilian clothes and who were strangers to Oxendine told him that they had been operating a store, but had received their calls to the Army and had to report the following Friday; that they were trying to dispose of their goods and had only a short time in which to peddle them out. Oxendine replied that he did not particularly need anything, but as he had a son in the Army then in Africa, he would be glad to make a small purchase if it would be of help to them. He thereupon purchased four bags of flour, some canned goods, tobacco and eggs, and paid the fair market value, $13 or $14, for the goods.

The thieves then drove on a distance of two or three hundred yards to the home of Archie Ransom, where they saw the defendant Ransom and Hilton Oxendine. The convicts repeated the same story which they had told Nunn Oxendine relative to being merchants and receiving their calls to the Army and trying to dispose of their stock of goods by peddling them out. Here they sold 60 or 75 pounds of sugar, 2 cartons of cigarettes and 5 dozen eggs. Archie Ransom paid $12 for the goods, their fair market value. Hilton Oxendine made no purchase as he had no money, albeit there is evidence to the effect that both made the purchase and Ransom advanced the money.

Later that same day, when the officers came to search for the goods, after arresting the thieves, Nunn Oxendine made no effort to conceal anything. He frankly stated his connection with the purchase. Archie Ransom and Hilton Oxendine first denied the purchase, then later admitted receipt of some of the goods. They denied purchasing any cigarettes, and these were not recovered, if they actually received them.

James Williams who was used by the State as a witness said on cross-examination that the defendnts "didn't know anything about the property being stolen" when they made the purchases.

Verdicts: Guilty as charged as to each defendant.

Judgments: Six months on the roads as to each defendant.

The defendants appeal, assigning as error the refusal to sustain their demurrers to the evidence and to dismiss the actions as in cases of nonsuit.

STATE *v.* OXENDINE.

*Attorney-General McMullan and Assistant Attorneys-General Patton and Rhodes for the State.*

*W. S. Britt, T. A. McNeill, and McLean & Stacy for defendants.*

STACY, C. J.   The question for decision is whether the cases as made can survive the demurrers. Specifically, the question posed is whether the evidence warrants the finding that each of the defendants, with felonious intent, received the respective articles of merchandise, the property of Leo Smith, knowing at the time that the same had been feloniously stolen or taken in violation of C. S., 4250.   *S. v. Miller,* 212 N. C., 361, 193 S. E., 388; *S. v. Dail,* 191 N. C., 231, 131 S. E., 573; *S. v. Caveness,* 78 N. C., 484.   We are disposed to think the element of *scienter* is wanting.   *S. v. Spaulding,* 211 N. C., 63, 188 S. E., 647.   Apparently the circumstances are not such as to justify an inference of guilty knowledge on the part of the defendants.   *S. v. Stathos,* 208 N. C., 456, 181 S. E., 273; *S. v. Wilson,* 176 N. C., 751, 97 S. E., 496.

The one fact in Nunn Oxendine's case urged as a circumstance to support an inference of *scienter,* is the unusual hour of the night at which the property was brought to his house.   *S. v. Gordon,* 105 Minn., 217, 117 N. W., 483, 15 Ann. Cas., 897.   In the cases of the other two defendants, the additional fact of their having first denied to the officers that they had purchased any of the merchandise, is also urged as indicating guilty knowledge on their part.   *Birdsong v. State,* 120 Ga., 850, 48 S. E., 329.   These are the only inculpating circumstances on the record.   They may be sufficient to excite suspicion, somewhat strong perhaps, but they apparently leave too much to surmise or assumption to carry the cases to the jury.   *S. v. Epps,* 214 N. C., 577, 200 S. E., 20; *S. v. Jones,* 215 N. C., 660, 2 S. E. (2d), 867.   The evidence must do more than raise a suspicion or conjecture in regard to the essential facts of the case.   *S. v. Prince,* 182 N. C., 788, 108 S. E., 330; *S. v. Montague,* 195 N. C., 20, 141 S. E., 285.

The test is whether the defendants knew, or must have known, the goods were stolen, not whether a reasonably prudent person would have suspected strangers calling at 2 or 3 o'clock in the morning.   *S. v. Stathos, supra; S. v. Spaulding, supra;* 17 R. C. L., 86.   Traveling or visiting at early morning hours is not an unusual occurrence among some portions of our population.   Note, 22 L. R. A. (N. S.), 833.   Moreover, the story told by the thieves is to be considered in connection with the unusuality of the hour of their call.   *S. v. Miller, supra;* 45 Am. Jur., 389.   Then, too, it is to be remembered the testimony of the State's witness, James Williams, negatives *scienter* or guilty knowledge on the part of the defendants.   It also appears that full value was paid for the goods in each instance.

The aid which the defendants sought to give the thieves (unknown as such at the time) was not in furtherance of the larceny as was the case in *S. v. Rushing,* 69 N. C., 29, but to enable them to dispose of their merchandise before going into the Army a few days hence. Such was the situation as it appeared to the defendants. "The law does not condemn where the heart is free from guilt." *S. v. Morrison,* 207 N. C., 804, 178 S. E., 562.

True it is, the defendants, Archie Ransom and Hilton Oxendine, exhibited some uneasiness when questioned by the officers after the event, but not so with Nunn Oxendine, who freely told of his purchase. Open and frank responses would have served them better, as they doubtless now understand, *S. v. Grass, ante,* 31, but this one circumstance seems hardly sufficient to sustain a conviction as to the equivocating defendants, especially as their equivocation may be ascribed to other causes, *e.g.,* the purchase of the sugar without ration coupons, or their natural fear of the officers. *S. v. Morrison, supra;* 45 Am. Jur., 389; *S. v. Massey,* 86 N. C., 658.

It is conceded that no presumption arises here and no guilty inference is to be drawn from the mere fact of the recent possession of the stolen property by the defendants. *S. v. Best,* 202 N. C., 9, 161 S. E., 535; *S. v. Lowe,* 204 N. C., 572, 169 S. E., 180.

The result is that the motions to dismiss or for judgments of nonsuit will be sustained. C. S., 4643.

Reversed.