STATE v. CHARLIE HOSKINS, JAMES LANCASTER, AND CHRISTOPHER LOCKLEY.

(Filed 5 November, 1952.)

**1. Receiving Stolen Goods § 4—**

Possession of recently stolen property, without more, raises no presumption that the possessor received it with knowledge that it had been feloniously stolen. G.S. 14-71.

**2. Receiving Stolen Goods § 6—Evidence held insufficient for jury in this prosecution for receiving stolen goods.**

The State's evidence tending to show merely that the thieves of tires went to defendant's house late at night and asked him if he wished to buy some tires, that defendant said it was too late to talk about buying tires and to come back the next day, and that the next day the stolen tires were found covered up on a disabled truck in defendant's woodyard, *is held* insufficient to be submitted to the jury on the issue of defendant's guilt of receiving stolen property with knowledge that the property had been stolen, and *held further,* testimony of the officers to the effect that defendant did not know that the tires were on his property and was surprised when they were found there would seem to exculpate defendant of even receiving the property.

**3. Criminal Law § 52a (1)—**

Exculpatory testimony of the State's witnesses may be considered on motion to nonsuit, since the State by offering such testimony presents it as worthy of belief.

APPEAL by defendant Christopher Lockley from *Burney, J.,* at June Term, 1952, of CRAVEN.

Criminal prosecution upon a bill of indictment charging Charlie Hoskins, James Lancaster and Christopher Lockley in separate counts with these offenses (1) felonious breaking and entering building of Jake Hill, (2) larceny of automobile tires of value of $400, goods of Jake Hill, and (3) feloniously receiving stolen automobile tires of value of $400, goods of Jake Hill, knowing them to have been stolen.

Upon the trial in Superior Court the evidence offered by the State tends to show that the service station of Jake Hill was broken into and twenty-six new tires and two re-caps were taken therefrom on Monday night, 6 May, 1952, and that the defendants Charlie Hoskins and James Lancaster were implicated in both offenses.

And the evidence offered by the State as it relates to defendant Christopher Lockley is substantially as follows: Between one and two o'clock on the night of the breaking, and as the tires were being stacked by defendant Charlie Hoskins behind Hugh Smith's real estate office, quoting James Lancaster, as a witness for the State, "I went down to Diz Lockley's with Quinn . . . to Diz Lockley's house which was about two or three blocks from the filling station. I figure it was between one and two o'clock. When I got to Lockley's I knocked on the door and it was some time before he came down, and he said it was too late for him to go and look at any tires. Quinn asked him about the tires, and he said it was late at night and he would see him in the morning, and he also recommended a guy to him to move the tires. Lockley did that . . . Then me and Quinn went back, and when we got to where the tires were behind that building I left and went home . . ."

Then on cross-examination, this witness continued: "I didn't see Lockley until about three thirty that afternoon. I asked him if he would like to buy some tires and he asked what size they were, and I told him and he wrote it down on a piece of paper. And at that time I did not tell him I was going to steal any tires . . . He knew I wasn't in the tire business. When I went to Diz Lockley's house that night I did not tell him I had stolen the tires. I told him I had some tires. He didn't know where they came from and I did not tell him anything about them. So far as I knew he did not have any reason to think they were stolen . . . After he told me it was too late at night to talk about buying any tires he said come back in the morning and I will look at them. I saw him on Tuesday morning. He passed me at Five Points. I didn't talk to him. And I did not see the tires any more after that night behind the filling station. As to what happened to them after they were at Isaac Smith's place, I do not know. I left and went home."

Capt. Brinson, as witness for the State, testified: ". . . I came in on this matter on Wednesday when the tires were found . . . Mr. Jernigan, Mr. Toler and myself got a search warrant for Christopher Lockley's

woodyard and went up there looking for tires. It is a closed-up woodyard. We went there and Lockley was asleep and we gave him a minute to get up and get himself straight. And we asked him if he had some tires, and told him we had a search warrant, and started to read it. And he said, 'You needn't read it, they are here.' We went in and saw some tires that looked like second-hand tires . . . and I told him I was looking for mostly new tires, that that was not what I was looking for. And Diz said they weren't there. He said, 'You can go and look anywhere you want to on the place.' . . . And there was a truck parked inside the woodyard —about a ton-and-a-half Chevrolet which had a flat body with sides about 4½ feet—just boards nailed on top of the other. I walked up to the truck . . . and there were some tires in there . . . that had some boards over them and partially covered up. I called Diz and said, 'Diz, here's the tires I am looking for.' And Diz started raising sand, that is, about the tires being there, about somebody putting them on his property . . . there were 18 new tires and 2 re-capped ones . . . He said it was his truck, but he didn't know how the tires got in there. . . . We loaded them (the tires) . . . and took them to Jake Hill's station. There Jake Hill identified the tires as being his . . . While we were there at the station . . . I went over and got in the back seat of the police car where Diz was, and Diz . . . Christopher Diz Lockley told me at that time that James Lancaster and a fellow called Quinn came to his house on Tuesday morning about 2 :00 or 2 :30 and asked him if he wanted to buy some tires . . . that he told them that it was too late to talk about any tires then,— that he would see them tomorrow; that they asked him if he could take his car and go move the tires, or let them have the car." That he "told them he did not have anything there but the Buick and he wasn't going to move it out of the yard that night. So they left and went back uptown." The officer continued: "I did not see James Lancaster . . . arrested. I was there when they brought him in. He made a statement. He said that he and Quinn went to Diz's home the night before," saying in presence of "Diz" about the same he related on the witness stand.

And this officer continued: "Quinn said they had to move the tires because it would be day in a little while . . . Lockley's place . . . there's a small alley from where the tires were stacked in the back of the real estate office,—just a small alley crossing to the woodyard."

Then on cross-examination, this officer said: ". . . Lockley . . . when he first saw the tires, acted surprised that we should find the tires there . . . He acted surprised. I don't see any reason why he should put on. The first thing I knew that James Lancaster was connected with the theft was what Diz Lockley told me. And when I brought Diz to confront him that's when James Lancaster finally admitted to what he told me. The old truck that those tires were found on was a truck that was not in

STATE *v.* HOSKINS.

operating condition. The truck was not in use . . . It has been sitting there in the yard as I noticed for quite a while."

Capt. Ed Belangia, as witness for the State, testified: That he was present when Diz told about Lancaster and Quinn coming to his house—substantially in accord with other testimony detailed above. Then on cross-examination this witness concluded by saying: "The only connection that Diz had was that this man went to his home at 2:30 in the morning. He told us that."

Defendant Lockley reserving exception to denial of his motion for judgment as of nonsuit when State first rested, testified, in substance, that he did not know anything about the tires being stolen; that he did not know the tires were on his wood lot; that he did not know how they got there; and that this truck that was on his woodyard didn't belong to him,—it was a truck that a boy brought there for him to fix.

Defendant Lockley renewed his motion for judgment as of nonsuit at the close of all the evidence. Motion overruled. Exception.

Verdict: As to Charlie Hoskins and James Lancaster: Guilty of breaking and entering and larceny as charged. As to Christopher Lockley: Guilty of receiving stolen property knowing it to have been stolen.

Judgment: Pronounced: As to Christopher Lockley: Confinement in prison.

Defendant Christopher Lockley appeals to Supreme Court and assigns error.

*Attorney-General McMullan and Assistant Attorney-General Love for the State.*

*Norris C. Reed, Jr., and Charles L. Abernethy, Jr., for defendant, appellant.*

WINBORNE, J. The criminal offense of which defendant, appellant, stands convicted is creature of statute, G.S. 14-71, as amended by 1949 Session Laws, Chap. 145, Sec. 1, which declares in pertinent part that "if any person shall receive any . . . property . . . the stealing or taking whereof amounts to larceny . . . such person knowing the same to have been feloniously stolen or taken . . . he shall be guilty of a criminal offense . . . ."

And it is the holding of this Court that the inference or presumption arising from the recent possession of stolen property, without more, does not extend to the above statutory charge (G.S. 14-71 as amended) of receiving such property knowing it to have been feloniously stolen or taken. *S. v. Adams,* 133 N.C. 667, 45 S.E. 553; *S. v. Best,* 202 N.C. 9, 161 S.E. 535; *S. v. Lowe,* 204 N.C. 572, 169 S.E. 180; *S. v. Oxendine,* 223 N.C. 659, 27 S.E. 2d 814; *S. v. Larkin,* 229 N.C. 126, 47 S.E. 2d 697.

Applying the provisions of the statute and this principle to the evidence offered upon the trial below, taken in the light most favorable to the State, it shows recent possession of the stolen automobile tires, and nothing more, and is insufficient to make out a case for the jury on the charge of receiving the automobile tires of Jake Hill, described by the officer, knowing that they had been feloniously stolen or taken.

Indeed, the testimony of the officers, offered by the State, as to statements of defendant in respect to the automobile tires, stolen from Jake Hill, tend to wholly exculpate defendant of the charge of receiving them. By offering such statements, the State thereby presents them as worthy of belief. See *S. v. Hendrick,* 232 N.C. 447, 61 S.E. 2d 349, and cases there cited at page 456. "When the State offers evidence which tends to exculpate the defendant, he is entitled to whatever advantage the testimony affords, and so, when it is wholly exculpatory, he is entitled to his acquittal." *S. v. Robinson,* 229 N.C. 647, 50 S.E. 2d 740.

Hence the judgment from which this appeal is taken is hereby

Reversed.