STATE v. PHILIP NEILL, OLIN SISK AND BILL REYNOLDS.

(Filed 6 June, 1956.)

**1. Larceny § 1: Receiving Stolen Goods § 1—**

Larceny and receiving stolen goods with knowledge that they had been stolen are separate and distinct offenses, and not degrees of the same offense.

**2. Receiving Stolen Goods § 1—**

The offense of receiving stolen goods with knowledge that they had been stolen presupposes that the goods had been stolen by someone other than the person charged with the offense of receiving, and the person guilty of the larceny cannot be guilty of receiving.

**3. Larceny § 5: Burglary and Unlawful Breakings § 9: Receiving Stolen Goods § 4—**

Where the evidence shows that a store had been broken and entered and goods stolen therefrom, the recent possession of the stolen goods raises a presumption of fact that the possessor is guilty of the breaking and entering and the larceny, but such recent possession, nothing else appearing, raises no presumption that the possessor is guilty of receiving the goods with knowledge that they had been stolen.

**4. Receiving Stolen Goods § 6—**

Evidence that a store was broken and entered and goods stolen therefrom, and that defendants soon thereafter attempted to sell the stolen goods to another, with other evidence tending to show defendants' guilt of the breaking and larceny, is insufficient to support a conviction of defend-

ants of receiving the goods with the knowledge that they had been stolen, and their motions to nonsuit on this count should have been allowed. G.S. 14-71.

**5. Criminal Law § 81a—**

The Supreme Court can review decisions of the lower courts only on matters of law or legal inference. Constitution of North Carolina, Art. IV, sec. 8.

APPEAL by defendants from *Huskins, J.,* February Term, 1956, of CATAWBA.

This is a criminal prosecution tried upon an indictment charging in the first count that the defendants Bill Reynolds, Olin Sisk and Philip Neill did on 27th November 1955 break and enter Hoyle Grocery Store in Catawba County with the intent to steal, take and carry away the merchandise, etc., of the said Hoyle Grocery Store. The second count charges the defendants with the larceny of 200 cases of beer, one 16-gauge bolt shotgun, one German Luger pistol, one P-38 pistol, one .32 revolver pistol, one .25 automatic pistol, 20 cartons of cigarettes, 3 dozen combs, and $30.00 in silver, of the value of more than $100.00, the goods, chattels and moneys of Hoyle Grocery Store. The third count charges the defendants with receiving the above described goods, chattels and moneys of Hoyle Grocery Store, knowing such goods, chattels and moneys to have been feloniously stolen.

The State's evidence tends to show that Hoyle Grocery Store was duly licensed to sell beer in 1955; that on Saturday night, the 27th of November, 1955, there were in the store several hundred cases of beer, including Blue Ribbon, Schlitz, High Life, and perhaps a small quantity of other brands; that the next night one John Parker, an employee of the store, returned to his sleeping quarters in the back of the store around 10:30 or 11:00 o'clock and found the door lock broken and around 200 cases of beer were missing, together with other items enumerated in the bill of indictment. This witness identified one of the cases of beer that was stolen, which was offered as State's Exhibit No. 1, based on the fact that he had done some computing in pencil on the side of the particular case of beer in connection with the sale of certain other beer, on Saturday, the day before the store was robbed; that he did not sell the case on which his calculations had been made.

Edwin Hoyle testified that he was the owner of Hoyle Grocery Store; that the store was closed on Sunday, 27th November, 1955; that he was in the store on that date around 6:30 p.m.; that the goods reported stolen were in the store at that time, and he identified a certain gun, State's Exhibit No. 2, as among the articles missing. State's Exhibit No. 2, the gun, had been found some time after the robbery by Mr. Will Neill in a wooded area on his premises in Gaston County.

Mr. Neill notified the officers of his discovery and turned the gun over to them. One fingerprint on the gun was identified as being that of the defendant Philip Neill.

One of the State's principal witnesses was Walter Hannon, who ran a small store west of Cherryville in Gaston County in the Fall of 1955. This witness testified that he was a bootlegger while operating his store, engaged in selling both whiskey and beer; that before this robbery these defendants came to his place of business and made inquiry about borrowing a trailer that he had in his possession. That the defendant Neill said he wanted to haul some stuff from up in Catawba. He also said something about knocking over the place known as County Line, which place is at Star Town in Catawba County. The witness told them he would not loan his trailer for anything like that. Two days later he saw the defendants again, and Neill, in the presence of the two other defendants, asked what he was paying for beer. He told him he had been paying $5.50 for regular size and $6.50 for king size, and that he could not handle over ten cases at a time. Neill told him he thought he could bring it to him a little better than that. He told Neill he couldn't use any beer except Schlitz and Budweiser; that on the first Sunday night in December, 1955, he had gone out and when he returned around 11:30 or 12:00 o'clock there were ten cases of Schlitz and Budweiser beer packed up at his door. A few days later the defendants came back and witness inquired of Neill if he had brought the beer and he replied, "Ten cases." That he told him he didn't have but $40.00 and Neill told him that would be all right, he wouldn't worry about getting the rest. The witness testified further that about two days later, around 11:00 o'clock at night, these defendants brought to his place thirty additional cases of beer consisting of Schlitz, Budweiser, High Life, and some other brands; that the beer was unloaded from Neill's car and put into the witness's car, and the defendant Sisk went with him to store it under the floor of his brother-in-law's home. A few days later the witness's place of business was raided by Gaston County officers and they found and seized a couple of cases of beer and some whiskey. This witness requested the officers to let him go alone and bring the unsold portion of the thirty cases of beer he had purchased from the defendants. He was permitted to do so and delivered twenty cases of beer to the officers. The witness denied having bought any Blue Ribbon beer from the defendants. He said he could not identify the State's Exhibit No. 1 as one of the cases he turned over to the Gaston County officers.

The State offered evidence to the effect that the State's Exhibit No. 1, a case of Blue Ribbon beer, was among the cases of beer Walter Hannon turned over to the officers of Gaston County.

The defendants testified in their own behalf and denied that they had broken into Hoyle Grocery Store and also denied they had sold Walter Hannon beer at any time.

The jury returned a verdict of not guilty on the first and second counts, but guilty of receiving stolen goods, knowing them to have been stolen. From the judgment imposed, the defendants appeal, assigning error.

*Attorney General Rodman, Assistant Attorney-General McGalliard and Assistant Attorney-General Giles, for the State.*

*Mullen, Holland & Cooke, and Sigmon & Sigmon, for defendants.*

DENNY, J.   The question presented for determination on this appeal is whether or not the court committed error in overruling the defendants' motion for judgment as of nonsuit on the third count, which charges the defendants with receiving stolen goods, knowing them to have been stolen.

The crimes of larceny and receiving stolen goods, knowing them to have been stolen, are separate and distinct offenses and not degrees of the same offense.   *S. v. Brady,* 237 N.C. 675, 75 S.E. 2d 791; *In re Powell,* 241 N.C. 288, 84 S.E. 2d 906.   However, receiving stolen goods is a "sort of secondary crime based upon a prior commission of the primary crime of larceny.   It presupposes, but does not include, larceny. Therefore, the elements of larceny are not elements of the crime of receiving."   *S. v. Martin,* 94 Wash. 313, 162 P. 356.

In Wharton's Criminal Evidence, 10th Edition, Volume 1, section 325b, page 643, the essential elements of the crime of receiving stolen goods which must be proven, are stated as follows: "(a) *The stealing of the goods by some other than the accused;* (b) that the accused, knowing them to be stolen, received or aided in concealing the goods; and (c) continued such possession or concealment with a dishonest purpose." (Emphasis added)

In the case of *In re Powell, supra, Johnson, J.,* speaking for the Court, said: "It suffices here to note that the crime of receiving presupposes, as an essential element of the offense, that the property in question had been stolen by someone *other than* the person charged with the offense of receiving.   Therefore, it is manifest that a person cannot be guilty both of stealing property and of receiving the same property knowing it to have been stolen.   If the one is true, the other cannot be."

It is essential to a conviction of the crime charged in the third count of the bill of indictment under consideration that the goods received by the defendants were stolen by another and retained that status until they were delivered to the defendants.   *S. v. Collins,* 240 N.C. 128, 81 S.E. 2d 270.

The evidence adduced in the trial below would seem to have been amply sufficient to have warranted a conviction as to each of these defendants on the first two counts. Recent possession of stolen property will ordinarily raise a presumption of fact, tending to show guilt of the possessor on his trial upon an indictment for larceny. *S. v. Hullen,* 133 N.C. 656, 45 S.E. 513; *S. v. Record,* 151 N.C. 695, 65 S.E. 1010, 25 L.R.A. (N.S.) 561, 19 Ann. Cas. 527; *S. v. Neville,* 157 N.C. 591, 72 S.E. 798; *S. v. Anderson,* 162 N.C. 571, 77 S.E. 238; *S. v. Lippard,* 183 N.C. 786, 111 S.E. 722; *S. v. Reagan,* 185 N.C. 710, 117 S.E. 1; *S. v. Williams,* 219 N.C. 365, 13 S.E. 2d 617.

In *S. v. Hullen, supra,* this Court said: "If recent possession of the stolen goods is evidence that defendant committed the larceny, it must also of necessity be evidence of the fact that the defendant broke and entered the house, because it is evident that the larceny was committed in the house by the person who broke and entered it, and there is no evidence that it was committed in any other way." The inference or presumption arising from the recent possession of stolen property, however, without more, does not extend to the statutory charge (G.S. 14-71) of receiving stolen property knowing it to have been stolen or taken. *S. v. Hoskins,* 236 N.C. 412, 72 S.E. 2d 876; *S. v. Larkin,* 229 N.C. 126, 47 S.E. 2d 697; *S. v. Yow,* 227 N. C. 585, 42 S.E. 2d 661; *S. v. Oxendine,* 223 N.C. 659, 27 S.E. 2d 814; *S. v. Lowe,* 204 N.C. 572, 169 S.E. 180; *S. v. Best,* 202 N.C. 9, 161 S.E. 535.

In the trial below, the jury was the trier of the facts upon a charge presumably free from error, since it was not brought forward in the case on appeal. *S. v. Record, supra.* We can only review decisions of the courts below on matters of law or legal inference. Constitution of North Carolina, Article IV, section 8.

A careful consideration of all the evidence disclosed by the record leads us to the conclusion that there is no evidence to support the conviction on the third count in the bill of indictment. It follows, therefore, that the motion for judgment as of nonsuit on that count should have been sustained.

Reversed.