## STATE v. GRACE BROWN

and

## STATE v. CLARENCE EDWARD JONES.

(Filed 10 January, 1958.)

**1. Searches and Seizures § 3—**

The undisputed evidence that defendant led officers to his car, took the key from under the floor mat and opened the trunk and a bag, which contained the merchandise in question, discloses defendant's voluntary consent to the search, waiving the requirement of a warrant.

**2. Larceny § 9—**

Where there is sufficient evidence of defendant's guilt of larceny upon a warrant charging larceny and receiving stolen property, and the court instructs the jury that the count of receiving stolen property would not be submitted, a general verdict of guilty will be interpreted in the light of the instructions and relates only to the charge of larceny.

**3. Same: Criminal Law § 165—**

Where there is sufficient evidence of defendant's guilt of larceny but not of his guilt of receiving stolen property, a general verdict of guilty on a warrant charging both larceny and receiving stolen property necessitates a new trial, since defendant cannot be guilty of both larceny and of receiving the same stolen property, and it is impossible to determine to which count the verdict relates.

APPEAL by defendants from *Williams, J.,* at May 15, 1957 Criminal Term, of DURHAM.

Criminal prosecutions: As to *Grace Brown,* upon three war-rents issued 9 April, 1957, out of Recorder's Court of Durham County, North Carolina, each charging in substance that Grace Brown, at and in Durham County, did on 6 April, 1957, will-fully, unlawfully and feloniously steal, take and carry away certain wearing apparel of values (1) $14.95, (2) $98.00 and (3) $85.00, respectively, of the goods and chattels of (1) Lerner Shop, (2) Ellis-Stone Company, and (3) Ellis-Stone Company, respectively, and did then and there receive and conceal the said property in each case, with intent to appropriate the same to her own use knowing same to have been stolen; and

As to *Clarence Edward Jones,* upon two warrants issued 9 April, 1957, out of said Recorder's Court, each charging in sub-stance that Clarence Edward Jones, at and in Durham County, did on 6 April, 1957, willfully, unlawfully and feloniously steal, take and carry away in each case a ladies' suit of the values of $98.00 and $75.00, respectively, of the goods and chattels of Ellis-Stone Company, and did then and there receive and con-ceal the said property in each case with intent to appropriate the same to his own use knowing same to have been stolen.

Defendants pleaded not guilty in each case. And after hear-ing the evidence the Recorder of said Recorder's Court found the defendant guilty in each case, and pronounced judgment in each case, from which defendants appealed to Superior Court.

In Superior Court the record shows three cases Numbers 6790, 6791 and 6792 against Grace Brown, and two cases Numbers 6801 and 6802 against Clarence Edward Jones,—all of which by consent of counsel for defendants and of the Solicitor for the State were consolidated for trial. Each defendant pleaded not guilty.

Upon trial in Superior Court the State offered evidence tend-ing to show substantially the following: About 5:30 o'clock on the afternoon of 6 April, 1957, Captain Gates of the Detective Department of the city of Durham, North Carolina, saw de-fendants Grace Brown, hereinafter called Brown, and Clarence Edward Jones, hereinafter called Jones, standing together in front of Jones and Frasier Jewelry Store. It was a very warm spring day, sun shining, and lots of people were on the street in shirt sleeves. Brown had on a big, long, heavy winter coat and heavy skirt. Jones, too had on a big heavy overcoat,— long heavy, winter coat.

Pursuant to a telephone call pertaining to a misdemeanor, un-named, and from source not revealed, but not from Lerner or Ellis-Stone Company, Captain Gates approached the two, Brown and Jones, and, after salutation and identifying himself as an officer, placed them under arrest. He took them to the Detective

S. *v.* Brown; S. *v.* Jones.

Bureau, where he separated them, Brown in back or interrogation room, with door fastened, and Jones in his office. Later it was discovered that Brown had taken off bloomers and hid them under two electric fans in the room where she was. And she made statement to officers, without threat, offer of reward or inducement, freely and voluntarily, in which she said: That she came to Durham that morning on a car with Jones; that she did not have any people there; that she came from New York; that she lived there and in Baltimore; that she left Baltimore the 4th month and the 4th day; that she went to Richmond; that "they" went to Raleigh on the 4th or 5th; and that she came from Raleigh to Durham; that she had been with Jones since last July; that they traveled from Richmond to Durham (the court ruled her statement competent only as to her, and not as to Jones); that they had been traveling together as man and wife; that they had been shoplifting; that she and Jones went to Ellis-Stone's; that she got two suits; that Jones got those in the car; that they went to Lerner's and she got the hat and pocket book, and Jones waited outside; and that when no one was looking she took the rack, rolled it up and put it in her bloomers under her skirt.

Captain Gates then interrogated Jones, and on being questioned, Jones said: That he came to Durham on a car from Winston-Salem, with a friend, whom he did not know; that he didn't see the kind of car it was; that he did not have any identification; that he didn't have a car; that, being told by the officer that he would be held until the officer found out who he was, and, after officer McCrae came in, Jones said, "Well, I will carry you to the car," or words of similar import; that the three of them walked from police department to Seaboard freight station where the car was parked; that on the way Jones told the officers that "You will find four suits in there" (the car), "ladies'" suits; that Jones raised the floor mat on the right side and got the key from under the floor mat, and opened the trunk and a bag which contained the four ladies' suits; that Jones did not make any objection to searching the car,—but consented to it; that the suits were the ones later identified by E. J. Stone; that the labels had been cut—but on later search the four labels were found under the front seat, along with other labels and papers.

And later in the room where Jones was, officers found a pair of "bloomers" or "pajamas" or "pants" under the desk. Also Jones was seen holding in his hand a leather belt that would go through the loops on the pants found under the desk.

There was evidence: That Lerner's had in store a combination of a bag, a hat and a suit, which matched, at price $14.98 plus

tax, one of which was missing around April 6th; that the hat and bag which had been identified did not have the tag showing that it had been sold.

As to the four suits, E. J. Stone, assistant manager of Ellis-Stone Company, testified substantially as follows: That he examined the four ladies' suits down at the police department on Monday, 8 April; that they were in the store two days prior to 6 April; that permission was not given to Brown and Jones to take them; that the retail values of the suits were $98.00, $85.00 and $75.00; that, quoting him, "I was sure they came from our store * * * because they still had our hanging tags on them. However, our labels were removed. I think Captain Gates has these in his possession at this time." And to this question on cross-examination: "Q. There could be hundreds of the same kind of suits?" he answered, "A. But only four have our sales tags"; and that the labels shown him are the labels which had been cut out.

Defendants offered no evidence, but reserved exceptions to denial of motions aptly made for judgment as of nonsuit.

The trial judge instructed the jury that the charge of receiving stolen property as contained in the warrants is not submitted in the case against defendant Brown; but is submitted as to defendant Jones.

The jury returned verdict of guilty in each case against each defendant.

Thereupon the court entered judgments as follows: *As to defendant Grace Brown:* In each case, imprisonment in quarters provided for women by the State Highway and Public Works Commission under the provisions of G.S. 148-27 for a term of two years to be worked under the supervision of the Prison Authorities,—the term in case No. 6791 to commence at the expiration of prison sentence in case No. 6790, and the term in case No. 6792 to commence at the expiration of prison sentence in case No. 6791, but to be suspended for a period of three (3) years from the date of her release from prison on condition that she remain of good behavior, violate no law of the State or Federal Government and remains gainfully employed,—upon violation of the terms of this suspended sentence capias and commitment to issue on motion of Solicitor at Term Time.

*And as to defendant Clarence Edward Jones:* In each case, imprisonment in the common jail of Durham County for a period of two years to be assigned to work the public roads under the direction of the State Highway and Public Works Commission,—the execution of the sentence in No. 6802 to

commence at the expiration of the road sentence imposed in case No. 6801.

Each defendant respectively appeals from the judgment as it relates to her or to him to Supreme Court, and assigns error.

*Attorney General Patton, Assistant Attorney General Love for the State.*

*F. B. McKissick, Arthur Vann, Lisbon C. Berry, Jr. for Defendants Appellants.*

WINBORNE, C.J.: While in the record of case on appeal here presented appellants group eighty-two assignments of error, based upon like number of exceptions, and in their brief filed in this Court refer to twenty-five of the exceptions so grouped, the underlying question is this: Was the search of the automobile of defendant Jones unlawful? The answer is No.

In the recent case of *S. v. McPeak*, 243 N.C. 243, 90 S.E. 2d 501, opinion by *Parker, J.*, it is stated by this Court that: "It is well settled law that a person may waive his right to be free from unreasonable searches and seizures. A consent to search will constitute such waiver, only if it clearly appears that the person voluntarily consented, or permitted or expressly invited and agreed to the search. Where the person voluntarily consents to the search, he cannot be heard to complain that his constitutional and statutory rights were violated," citing among others the case of *S. v. Moore*, 240 N.C. 749, 83 S.E. 2d 912, where many cases are assembled.

In the light of undisputed testimony Jones lead the officers to his car, and on the way told them that four ladies' suits were in the trunk of the car. And then on arriving at the car, took the key from under the floor mat and opened the trunk and a bag, which contained the suits. This constitutes voluntary consent to the search, and a waiver of his rights to be free from unreasonable search and seizure.

Such being the case, and taking the evidence in the light most favorable to the State, as is done when considering demurrer to the evidence, did the court properly deny defendants' motions for judgment as of nonsuit?

As to defendant Brown: The trial judge held, and instructed the jury, that the count charging defendant Brown with receiving stolen property, knowing it to have been stolen, would not be submitted. This was tantamount to granting a nonsuit on this charge. Therefore the action of the judge in overruling the demurrer to the evidence necessarily related only to the count against her charging larceny. And the voluntary statement of this defendant that she and Jones had been shoplifting;

that they went to Ellis-Stone's, and she got two suits,—those in the car, and that they went to Lerner's and she got the hat and pocket book, is sufficient to support a verdict of guilty as to the charges of larceny preferred against her. Hence the general verdict as to her will be interpreted in the light of the instruction so given by the court.

And as to defendant Jones: The evidence against him, taken in the light most favorable to the State, is not sufficient to support verdict of guilty on the counts charging the crime of receiving stolen property, knowing it to have been stolen. But under the doctrine as to recent possession, *S. v. Neill,* 244 N.C. 252, 93 S.E. 2d 155, the evidence is sufficient to support a verdict of guilty of the charges of larceny. Thus there is error in overruling Jones' demurrer to the evidence as it related to the counts charging receiving stolen property.

Moreover, since larceny and receiving stolen property are two separate and distinct criminal offenses, "the nature of which is such that guilt of one necessarily excludes guilt of the other," as stated by *Bobbitt, J.,* in *S. v. Meshaw,* 246 N.C. 205, 98 S.E. 2d 13, the defendant Jones could be guilty of one or the other, but not both. *S. v. Neill, supra.* So, on general verdict of guilty as charged it would be impossible to determine to which count the verdict related, and, hence, a new trial must be awarded to defendant Jones. *S. v. Meshaw, supra.* Other points discussed in brief filed need not be considered.

For reasons stated: In the judgment as to defendant Brown, there is

No Error.

In the case against defendant Jones, *New Trial* is ordered.