STATE OF NORTH CAROLINA v. BILLY RAYE ADCOCK

No. 121A83

(Filed 10 January 1984)

**1. Constitutional Law § 60; Jury § 7.2— fair cross section of community—burden of showing violation**

In order to establish a prima facie case of violation of the fair cross section principle, a defendant must show that: (1) the group alleged to have been excluded is a distinctive group; (2) the representation of the group in question within the venire is not fair and reasonable with respect to the number of such persons in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury selection process.

**2. Constitutional Law § 60; Jury § 7.4— fair cross section of community—failure to show violation**

Defendant, a white man tried by an all white jury, failed to establish a prima facie case showing a violation of the fair cross section principle where he presented evidence tending to show an absolute disparity of 7.8% of underrepresentation of black citizens on the jury panel in the county, since (1) such evidence failed to show that the representation of the group in question within the venire was not fair and reasonable with respect to the number of such persons in the community, and (2) defendant offered no evidence to show that there was any systematic exclusion of the group in the jury selection process.

**3. Constitutional Law § 31; Jury § 7.3— jury list—failure to order update analysis at State's expense**

The trial court did not err in the denial of defendant's motion that the State be required to pay a fee for an expert to conduct an update analysis of the county jury panel and master jury list where (1) defense counsel was of the opinion that the expert could establish a 10% absolute disparity of underrepresentation of black citizens on the jury in the county, but such evidence would not establish a prima facie violation of the fair cross section principle,

1

State v. Adcock

and (2) defendant failed to show a reasonable likelihood that the expert's services would have materially assisted defendant in his defense or that without such evidence he probably would not have received a fair trial.

**4. Criminal Law § 135.3; Jury § 7.11— death qualification of jurors**

The trial court did not err in denying defendant's motion to prohibit death qualification of jurors in this first degree murder prosecution.

**5. Jury § 6.4— questioning prospective jurors—views on capital punishment**

Both the State and the defendant have a right to question prospective jurors about their views on the death penalty so as to insure a fair and impartial verdict. The extent and manner of inquiry into prospective jurors' qualifications in a capital case is a matter that rests largely in the trial judge's discretion, and his rulings will not be disturbed absent a showing of an abuse of that discretion.

**6. Jury § 6— denial of motion for individual voir dire**

The trial court did not abuse its discretion in the denial of defendant's motion for an individual voir dire of prospective petit jurors.

**7. Jury § 7.11— death penalty—duty to set aside personal belief—refusal to instruct**

The trial court in a first degree murder case did not abuse its discretion in denying defendant's request that each individual juror be instructed prior to his voir dire examination that, in the event defendant is found guilty of first degree murder, his duty as a juror requires him to subordinate his personal feelings about the death penalty and to consider whether a sentence of death should be imposed.

**8. Criminal Law § 101.4— refusal to sequester jury—no abuse of discretion**

The trial court did not abuse its discretion in denying defendant's motion to sequester the jury in a first degree murder case because of pretrial and trial publicity.

**9. Criminal Law § 101— motion to prohibit misconduct by deceased's family members**

The trial court in a first degree murder case did not err in denying defendant's motion to prohibit the "exhibition" of deceased's family members to the jury where there was no evidence in the record to suggest any impropriety on the part of any member of the victim's family.

**10. Jury § 7— challenge for cause—preservation of exception**

In order to preserve an exception to the court's denial of a challenge for cause, defendant must (1) exhaust his peremptory challenges *and* (2) thereafter assert his right to challenge peremptorily an additional juror.

**11. Jury § 6.3— improper statement in question to juror—absence of prejudice**

The trial court in a first degree murder case did not abuse its discretion in overruling defendant's objection to the prosecutor's statement in a question to a prospective juror that if defendant failed to show to the satisfaction of the jury that he was insane at the time of the alleged act "and the jury does find

that he committed the alleged act beyond a reasonable doubt, then the jury must return a verdict of guilty," although the statement did not set forth all the elements of murder, where an extensive voir dire was conducted in the case, the court properly instructed on the elements of the crime, and defendant failed to demonstrate prejudice.

**12. Constitutional Law § 30— defendant's statements to witnesses not discoverable**

Statements made by defendant to two witnesses which were inculpatory and which were offered into evidence by the State were not discoverable under G.S. 15A-904(a) and were not required to be disclosed at trial under the rule of *State v. Hardy*, 293 N.C. 105.

**13. Criminal Law § 103— changing ruling on evidence during trial**

It is not error for a trial judge to change his ruling on the admissibility of evidence during the course of the trial.

**14. Criminal Law § 50.2— defendant's awareness of victim's death—incompetency of witness**

Defendant's sister was not competent to testify as to defendant's awareness or lack of awareness of the victim's death since such testimony was beyond the realm of the witness's personal knowledge.

**15. Criminal Law § 89.5— prior statement of witness—admissibility for corroboration—slight variances**

A witness's prior written statement was properly admitted for corroboration where the variations were slight and none contradicted the witness's testimony. Even if a reference in the statement to defendant's having shot at the decedent the day before she was killed amounted to more than a slight variation from the witness's testimony, its admissibility was not prejudicial error where (1) the trial court gave a limiting instruction to the jury to consider the written statement only if and to the extent it corroborated the witness's testimony, and (2) there was other evidence in the record that defendant shot at decedent the day before the killing as well as other substantial evidence tending to show premeditation and deliberation.

**16. Criminal Law § 162.3— inadmissibility of witness's answer—motion to strike**

When a question does not indicate the inadmissibility of the answer, defendant should move to strike the answer as soon as its inadmissibility becomes known, and failure to so move constitutes a waiver of objection.

**17. Criminal Law § 102.3— cure of impropriety in jury argument**

The impropriety of the prosecutor's jury argument that "[t]he fact that this defendant is up here being judged in this Court indicates that he has acted improperly . . . against people in North Carolina, and against you as the people in this community" was cured when the trial court immediately sustained defendant's objection thereto and instructed the jury to disregard the statement.

State v. Adcock

**18. Criminal Law § 5; Homicide § 28.7— instructions—distinguishing insanity as complete defense and diminished capacity defense**

A defendant charged with first degree murder was not entitled to an instruction on diminished capacity, but the court's charge on diminished capacity was an error favorable to defendant. Moreover, the trial court adequately distinguished between insanity as a complete defense and insanity as a diminished capacity defense where the record shows that the diminished capacity instruction was clearly related to the charge on premeditation and deliberation and the charge on insanity as a complete defense came much later, and the jury could not have been confused by the order of the court's instructions.

**19. Criminal Law §§ 112.6, 120— instruction on consequences of acquittal by reason of insanity**

The trial court's use of the word "may" rather than "shall" in setting out the procedure for commitment hearings when a defendant is found not guilty by reason of insanity complied with the applicable statute, former G.S. 15A-1321, and could not have misled the jury to believe that defendant would be released without any commitment proceeding.

**20. Criminal Law § 112.6— presumption as to sanity—instructions—use of "in doubt"**

The trial court's instruction that "if you are *in doubt* as to the insanity of the defendant, the defendant is presumed under the law to be sane, and so you would find the defendant guilty if he is otherwise guilty" did not convey to the jury the message that defendant's burden of "satisfying" the jury of his insanity had been raised to that of "beyond a reasonable doubt" when considered in context with the court's other instructions, although the better practice would be to use the term "not satisfied" rather than "in doubt."

**21. Criminal Law § 112.4— charge on circumstantial evidence—prior cases overruled**

An instruction to the effect that a conviction may not be based upon circumstantial evidence unless the circumstances point to guilt and exclude to a moral certainty every reasonable hypothesis except that of guilt is unnecessary when a correct instruction on reasonable doubt is given. Prior decisions of the Supreme Court, to the extent that they hold otherwise, are expressly overruled.

**22. Criminal Law § 131.1— motion for new trial—newly discovered evidence—inadmissibility of affidavit**

An affidavit offered by defendant in support of his motion for appropriate relief on the ground of newly discovered evidence was clearly hearsay and was properly excluded by the trial judge. Furthermore, the affidavit would not have furnished a basis for a new trial where it tended only to contradict or impeach a former witness and was not of such a nature as to show that a different result would probably be reached at another trial.

Justice EXUM dissenting.

APPEAL by defendant from *Herring, Judge,* at the 8 November 1982 Session of DURHAM County Superior Court.

Defendant was charged in an indictment proper in form with the first-degree murder of Delores Lloyd Adcock. Defendant entered a plea of not guilty.

State's evidence tended to show that on the afternoon of 5 August 1980, the defendant in his car followed his wife in her car as she drove away from her place of employment at Northern Telecom near Durham. Mrs. Adcock turned off at the Avondale Drive exit and defendant followed. At the bottom of the ramp, defendant shot his wife. Her car rolled across the street, and defendant walked over on foot and shot her again. Then he drove away. Mrs. Adcock died as a result of the gunshot wounds.

Mrs. Adcock and defendant were married in 1962 and a boy and a girl were born to their marriage. Defendant and his wife were separated at the time of the shooting.

The victim's father and brother testified that defendant had threatened her on several occasions prior to her death. Kenneth Glenn, a friend of the defendant, testified that defendant told him in July 1980: "I think I am just going to go absolutely berserk crazy and end up blowing her brains out and going and killing myself too." At that time, defendant had in his possession a pistol.

Doctor Jerome Tift, a pathologist, testified that an autopsy of the body of Delores Adcock revealed two gunshot wounds—one in the upper arm and the other in the back of her skull. The latter wound was the cause of death.

Defendant called seven witnesses in his defense. Several testified that defendant had suffered from epilepsy in the past. Defendant's sister testified that following his separation from Delores, defendant seemed very depressed. Defendant's father offered similar testimony of defendant's depression and further stated that the family had a history of mental illness.

Dr. Robert Miller, a forensic psychiatrist, was called as an expert by defendant. Dr. Miller testified regarding his extended observation and treatment of defendant following defendant's commitment to John Umstead Hospital in late 1980. In his opinion, the defendant had been suffering from a manic-depressive

mental illness for approximately thirteen years. In addition, Dr. Miller also determined that defendant was suffering from the mental illness of multiple personality.

Since defendant claimed to have no memory of the circumstances immediately prior to and surrounding the shooting, Dr. Miller, with defendant's consent, employed hypnosis in an attempt to explore this amnesia as well as the existence of multiple personalities. In Dr. Miller's opinion, defendant's amnesia was genuine and at the time of the crime, he was suffering from such mental disease or defect that he did not understand the nature and quality of his act and the consequences of his act and he did not know that his act was wrong.

Defendant's own version of the circumstances surrounding the shooting came as a result of about fifteen sessions of hypnosis during which Dr. Miller helped defendant regain his memory. Based upon his conversations with defendant during these sessions, Dr. Miller summarized defendant's account of the shooting as follows: Defendant was very depressed about his wife's estrangement from him. He felt that if he could only talk with his wife, he could persuade her to return to him. On 5 August 1980, he drove to her place of employment and waited for her to get off work. He then followed her, honking his horn and blinking his lights. When she did not respond, defendant determined that the other person was not his wife. He followed her to the Avondale Drive exit at which time he noticed a gun on the seat of his car. Convinced that the driver of the car was not his wife, but rather some creature, defendant became more upset and confused. Defendant, according to Dr. Miller, felt that he must destroy the creature in order to save his wife. Defendant described the creature as a sack of potatoes with a face on it like that of his wife. Defendant shot the creature, and, according to Dr. Miller, felt he had done nothing wrong but rather had rid the world of the evil creature.

In rebuttal, the State called nine witnesses, several of whom testified that during the periods of time that they knew defendant, he appeared to them to be normal. Dr. Bob Rollins testified concerning his evaluation of defendant during defendant's stay at Dorothea Dix. He diagnosed defendant as having a mixed personality disorder, a disorder which has explosive antisocial hys-

terical and narcissistic features. In his opinion, defendant's claimed amnesia could not be confirmed. According to Dr. Rollins, the defendant knew the nature and consequences of his acts and could distinguish between right and wrong.

Dr. Billy Royal, a psychiatrist on the staff at Dorothea Dix, testified concerning his examination and observation of defendant during a three-month period. In his opinion, defendant did not show a multiple personality. Dr. Royal expressed no opinion as to defendant's criminal responsibility at the time of the shooting.

Defendant recalled Dr. Miller in surrebuttal who reaffirmed his original diagnosis and opinion concerning defendant's criminal responsibility.

The jury returned a verdict of guilty of first-degree murder. The jury found one aggravating circumstance but found it insufficient to impose the death penalty and instead recommended life imprisonment. The defendant appealed to this Court as a matter of right.

*Rufus L. Edmisten, Attorney General, by Donald W. Stephens, Assistant Attorney General, for the State.*

*Jerry B. Clayton and Susan F. Olive, for defendant-appellant.*

BRANCH, Chief Justice.

Defendant assigns as error the failure of the trial judge to quash the indictment charging him with murder and to quash the petit jury panel. He contends that the grand and petit jurors were selected in a discriminatory manner and did not represent a cross section of the community. By this assignment of error he also argues that the trial judge erred by refusing to order at State's expense an update analysis of Durham County jury panel and master jury list.

In support of the first portion of this assignment of error, defendant relies upon *Taylor v. Louisiana*, 419 U.S. 522 (1975), for the proposition that the sixth amendment guarantees that an accused must be tried by a jury composed of individuals who reflect a cross section of the community in which the crime was committed.

The defendant must carry the burden of showing a prima facie violation of this requirement by demonstrating that a distinctive group was clearly underrepresented as a result of the jury selection process. *Duren v. Missouri*, 439 U.S. 357 (1979). A person who seeks to carry this burden does not need to be a member of the discriminated class to assert his rights to a representative petit jury. *Taylor v. Louisiana*, 419 U.S. 522. When a defendant establishes such a prima facie case, the burden shifts to the State to rebut the established prima facie case. *State v. Hardy*, 293 N.C. 105, 235 S.E. 2d 828 (1977).

[1] In order to establish a prima facie case of violation of the fair cross section principle a defendant must show that: (1) the group alleged to have been excluded is a distinctive group; (2) the representation of the group in question within the venire is not fair and reasonable with respect to the number of such persons in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury selection process. *State v. Price*, 301 N.C. 437, 272 S.E. 2d 103 (1980); *State v. Avery*, 299 N.C. 126, 261 S.E. 2d 803 (1980); *State v. Cornell*, 281 N.C. 20, 187 S.E. 2d 768 (1972); *see also Swain v. Alabama*, 380 U.S. 202 (1965). In *Price*, we held that a fourteen percent absolute disparity, standing alone, was not sufficient to show that black citizens were not fairly reflected in the jury pool. In *Cornell*, we found that purposeful discrimination based on race was not shown by evidence of underrepresentation of blacks on the jury panel by as much as ten percent. *Swain v. Alabama, supra*, held likewise.

Evidence of underrepresentation requires a comparison of the proportion of the identifiable group in the total population to the population called for jury service. *State v. Hough*, 299 N.C. 245, 262 S.E. 2d 268 (1980).

[2] In instant case, defendant, a white man tried by an all white jury, relied solely upon data prepared by Mr. James O'Reilly, of the Duke University Sociology Department, which tended to show an absolute disparity of 7.8 percent of underrepresentation of black citizens in Durham County on the jury panel. We therefore conclude that defendant has failed to offer evidence tending to show that the representation of the group in question within the venire was not fair and reasonable with respect to the number of such persons in the community; furthermore, defendant has of-

fered no evidence to show that there was any systematic exclusion of the group in the jury selection process. He has therefore failed to establish a prima facie case showing violation of the fair cross section principle set forth in *Price, Avery,* and *Cornell.*

[3]   Neither do we find merit in defendant's contention that the trial judge erred in denying his motion for a fee for Mr. O'Reilly to update his data as to Durham County from 1979 to the date of the trial.

In *State v. Gray,* 292 N.C. 270, 233 S.E. 2d 905 (1977), we in part stated:

> There are, then, no constitutional or legal requirements that private investigators or expert assistance *always* be made available simply for the asking. (Citation omitted.) Our statutes, G.S. 7A-450(b) and 7A-454, as interpreted in *Tatum* and *Montgomery* require that this kind of assistance be provided only upon a showing by defendant that there is a reasonable likelihood that it will materially assist the defendant in the preparation of his defense or that without such help it is probable that defendant will not receive a fair trial. Neither the state nor the federal constitution requires more.

292 N.C. at 278, 233 S.E. 2d at 911 (emphasis in original).

We glean from our search of the transcript that defense counsel was of the opinion that he could establish a ten percent absolute disparity of underrepresentation of black citizens on the jury in Durham County if Mr. O'Reilly were paid for two days additional work. Assuming this to be true, we hereinabove have demonstrated that such evidence would not aid in establishing the prima facie case which defendant sought to raise. Further, defendant has failed to show a reasonable likelihood that Mr. O'Reilly's additional services would have materially assisted defendant in his defense or that without such evidence he probably would not have received a fair trial.

This assignment of error is overruled.

By his second assignment of error defendant contends that the jury selection procedures at trial deprived him of a fair and impartial trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

[4] In support of his position defendant first avers that the trial court erred by denying his motion to prohibit death qualification of jurors.

This Court has consistently rejected this argument. *State v. Fincher*, 309 N.C. 1, 305 S.E. 2d 685 (1983); *State v. Taylor*, 304 N.C. 249, 283 S.E. 2d 761 (1981); *State v. Avery*, 299 N.C. 126, 261 S.E. 2d 803 (1980); *State v. Cherry*, 298 N.C. 86, 257 S.E. 2d 551 (1979); *State v. Montgomery*, 291 N.C. 235, 229 S.E. 2d 904 (1976). Defendant cites no precedent or argument which would persuade us to overrule this well-established line of authority.

We further find no merit in defendant's contention that the trial judge erred by denying his motion to limit the questions asked of jurors concerning their views on capital punishment.

[5] It is well recognized in this jurisdiction that both the State and defendant have a right to question prospective jurors about their views on the death penalty so as to insure a fair and impartial verdict. *State v. Crowder*, 285 N.C. 42, 203 S.E. 2d 38 (1974), *modified*, 428 U.S. 903 (1976). The extent and manner of inquiry into prospective jurors' qualifications in a capital case is a matter that rests largely in the trial judge's discretion and his rulings will not be disturbed absent a showing of an abuse of that discretion. *State v. Bryant*, 282 N.C. 92, 191 S.E. 2d 745 (1972), *cert. denied* 410 U.S. 987 (1973). Here defendant has failed to show any abuse of discretion on the part of the trial judge.

[6] Under this assignment of error defendant next contends that the trial judge erred by denying his motion for individual *voir dire* of prospective petit jurors.

In support of this position defendant cites *State v. Taylor*, 298 N.C. 405, 259 S.E. 2d 502 (1979); *State v. Thomas*, 294 N.C. 105, 240 S.E. 2d 426 (1978). Both of these cited cases stand for the proposition that a motion to examine prospective jurors individually is directed to the trial judge's sound discretion and his ruling will not be disturbed absent a showing of abuse of that discretion. *Accord State v. Jackson*, 309 N.C. 26, 305 S.E. 2d 703 (1983); *State v. Brown*, 306 N.C. 151, 293 S.E. 2d 569, *cert. denied*, 74 L.Ed. 2d 642 (1982). Again, defendant has shown no abuse of discretion on the part of the trial judge in instant case.

[7] Defendant filed a pretrial motion requesting the trial judge to instruct each juror prior to his *voir dire* examination as follows:

> (Members of the jury.) You may be asked questions concerning your attitude towards capital punishment. In this regard, I give you the following instructions. In the event that the defendant is found guilty of first degree murder, and only in that event, the law requires that the jury consider, on the basis of factors as to which I will instruct you, whether or not the death penalty should be imposed.

> Thus, in the event the defendant is found guilty of first degree murder, the law requires that even if you are absolutely opposed to capital punishment, you should *consider* whether a sentence of death should be imposed. You must not lightly disregard your obligation as a juror. Where possible, you should subordinate your personal feelings about capital punishment to the duty imposed by law. I repeat that this duty is that you *consider* whether a death sentence should be imposed in the case before you.

> In responding to the questions which will be put to you regarding the death penalty, you must keep in mind your duty as a juror as I have just explained it to you.

Defendant cites no authority to support this motion and our research discloses none. Again, defendant seeks to invade the discretionary power of the trial judge's duty to supervise and control the course of the trial. We find no abuse of discretion in the denial of this motion. Neither do we find error of omission or commission in the court's instructions to the jury concerning their duties in the trial of this case.

This assignment of error including subsections a through d is overruled.

[8] Defendant's third assignment of error is two-fold. He argues first that the trial judge abused his discretion in denying defendant's motion to sequester the jury. Defendant premised his motion on his contention that pretrial and trial publicity were unfairly prejudicial to the trial of his case. Defendant concedes that the decision to sequester an impanelled jury is ordinarily left to the sound discretion of the trial court. *State v. Davis*, 290 N.C.

511, 227 S.E. 2d 97 (1976); *State v. Hamilton*, 264 N.C. 277, 141 S.E. 2d 506 (1965), *cert. denied*, 384 U.S. 1020 (1966). A careful examination of defendant's exhibits, consisting of several newspaper articles primarily dealing with his hospitalization for mental illness, reveals that they are non-inflammatory and fall far short of tending to establish unfair prejudice. Defendant has failed to show an abuse of the court's discretion.

[9]   Second, defendant argues that the trial court erred in denying his motion to prohibit the "exhibition" of deceased's family members to the jury. Defendant contends that the family members "positioned themselves at the courtroom door so that the jury would have to walk past them every morning upon entering the court." This "exhibition," according to defendant, denied him a fair and impartial trial because it inflamed the jury and caused them to render a guilty verdict. This contention is without merit. No evidence in the record suggests any impropriety on the part of any member of the victim's family and defendant has not only failed to show an abuse of discretion, he has failed to show in the first instance any adequate grounds for the exercise of discretion. *Compare State v. Stafford*, 203 N.C. 601, 166 S.E. 734 (1932).

Defendant's third assignment is overruled.

Defendant next contends, again in multi-faceted fashion, that he was denied a fair trial by the court's failure to dismiss jurors who expressed doubts about the insanity defense and also by the court's permitting the State to express during *voir dire* an inaccurate description of the burden of proof.

[10]   Defendant's first contention fails in that he has not demonstrated that if there were error, it was prejudicial. Defendant challenged for cause the jurors who allegedly expressed doubts about the insanity defense. Upon the trial court's denial of the challenges for cause, defendant exercised his peremptory challenges. Defendant concedes there was no showing of prejudice under our well-settled rule that "a defendant, in order to preserve his exception to the court's denial of a challenge for cause, must (1) exhaust his peremptory challenges *and* (2) thereafter assert his right to challenge peremptorily an additional juror." *State v. Allred*, 275 N.C. 554, 563, 169 S.E. 2d 833, 838 (1969) (emphasis in original). Defendant failed here to assert an additional peremptory challenge.

[11]  Defendant secondly argues within this assignment that the State presented an inaccurate description of the burden of proof during one of its questions to a prospective juror. In questioning a prospective juror, Dr. Bill L. Gunn, the following exchange occurred:

> Mr. Edwards: You do understand that the defendant does have a burden of showing to the satisfaction of the jury that he was insane at the time of the act alleged?
>
> Dr. Gunn: Yes.
>
> Mr. Edwards: That if he does not so satisfy the jury then— and the jury does find that he committed the alleged act beyond a reasonable doubt, then the jury must return a verdict of guilty?
>
> Dr. Gunn: (Nods head.) Yes.

Defendant's objection to the prosecutor's last statement was overruled. Defendant argues that the statement was incorrect because it did not set forth all the essential elements of murder. Thus, defendant argues, the statement misled the jurors concerning the State's burden of proof. We disagree.

It is the duty of the trial court "to see that a competent, fair and impartial jury is impaneled. . . ." *State v. Johnson*, 298 N.C. 355, 362, 259 S.E. 2d 752, 757 (1979). However, the court's rulings will not be reversed absent a showing of abuse of discretion. *State v. Phillips*, 300 N.C. 678, 268 S.E. 2d 452 (1980). In light of the extensive *voir dire* in this case, the proper instructions on the law by the judge, and defendant's inability in the first instance to demonstrate the clear prejudicial error in the State's question, we are not inclined to hold that the trial judge abused his discretion in overruling defendant's objection.

[12]  In his fifth assignment, defendant challenges the admission of certain testimony concerning statements made by him to witnesses. He first contends that the court erred in finding that his statements to Betty Jane Denton and Kenny Glenn were not subject to discovery under G.S. 15A-904(a). Defendant apparently acknowledges that under our rule in *State v. Crews*, 296 N.C. 607, 252 S.E. 2d 745 (1979), he is only entitled to discover statements "made by him to persons *acting on behalf of the State*." *Id.* at 620, 252 S.E. 2d at 754 (emphasis added). Nevertheless, defendant relies on *State v. Hardy*, 293 N.C. 105, 235 S.E. 2d 828 (1977), and

asserts that such statements should have been discoverable at trial. Defendant's reliance upon *Hardy* is misplaced. *Hardy* dealt with the required disclosure of material at trial which is "favorable and material to the defense." *Id.* at 127, 235 S.E. 2d at 841. In the instant case, we are not concerned with matters favorable to defendant which are being suppressed by the prosecution. Here we are dealing with statements, made by defendant to witnesses, which are inculpatory in nature and which the State offered into evidence at trial against defendant. The statements were not discoverable under G.S. 15A-904(a); nor were they subject to required disclosure under the *Hardy* rule.

[13] Defendant also contends that the court erred in admitting the testimony of Deputy Kenneth Wilson. Initially, the trial court ruled Deputy Wilson's testimony inadmissible due to the prosecution's failure to provide it to defendant pursuant to requested discovery. Later, the trial judge reversed his decision and allowed the testimony.

Defendant here contends that the deputy's testimony was extremely prejudicial and that its admission was error pursuant to our rule that one superior court judge may not overrule another superior court judge. *See Davis v. Jenkins*, 239 N.C. 533, 80 S.E. 2d 257 (1954). Defendant, by analogy, argues that such a rule precludes a judge from reversing himself during the course of a trial. We disagree. It is not error for a judge to change his ruling on the admissibility of evidence. 1 Brandis, N.C. Evidence § 28 (2d rev. ed. 1982). Furthermore, a trial judge who determines that he has committed error during the course of a trial certainly should take whatever steps necessary to cure or correct a detected error. Curative action often precludes unnecessary and prolonged review by the appellate courts. This assignment is without merit.

[14] Defendant next contends that the trial court erred in refusing to allow the introduction of testimony by Shirley Lloyd. Ms. Lloyd, defendant's sister, testified regarding her contacts and communications with defendant following his arrest. During a portion of defendant's examination of this witness, the following took place:

Q. When Mr. Edwards was focusing in on whether or not you felt that being depressed and sad and crying was an ap-

propriate response for a person who had been charged with first-degree murder, I believe you said that you were aware of the charges pending against him. What I want to ask, is do you know whether or not your brother was aware of those charges?

OBJECTION

OVERRULED

A. No, I am not. At that point I don't know whether he was aware or not.

Q. Did your brother say anything or do anything to cause you to have doubts as to whether or not he was aware of it?

OBJECTION

SUSTAINED

Q. Can you state what he said or did regarding the charges that had been brought, or regarding the death of his wife?

A. I am not sure if this is the first time I saw him, but he did tell me later that he didn't remember anything.

Q. Did he ever state to you anything concerning whether or not his wife was dead?

OBJECTION

SUSTAINED

Q. Do you know whether or not your brother knew that his wife was dead?

OBJECTION

SUSTAINED

Q. Did he ever state to you whether or not he knew that his wife was dead?

OBJECTION

SUSTAINED

Defendant contends that the purpose of the questions posed was to elicit testimony that defendant was not aware of his wife's

death or of the charges brought against him. Defendant argues that the excluded evidence was admissible and was relevant to rebut the State's cross-examination of the witness which tended to show that defendant's attitude and depression were normal responses for a person whose wife was dead and who had been charged with murder. We disagree.

It is elementary in the law of evidence that ordinarily a witness may only testify concerning matters within his own personal knowledge. *Robbins v. Trading Post*, 251 N.C. 663, 111 S.E. 2d 884 (1960). In the instant case, the fact of defendant's own awareness or lack of awareness of his wife's death was beyond the realm of the witness's personal knowledge and she was therefore not competent to testify concerning that matter. *Id.* Furthermore, regarding the defendant's awareness, or lack thereof, of charges having been brought, the witness testified unequivocally that she did not know whether he was aware or not. There was no error in the trial court's exclusion of the witness's testimony.

Defendant's next assignment relates to the admission of testimony of State's witnesses Betty Glenn, Wayne Joyner, Debbie Starnes, Carolyn Neely and Shirley Lloyd.

[15] Considering defendant's contentions seriatim, we turn first to the challenged testimony of Ms. Glenn. Ms. Glenn, a co-worker of decedent, testified concerning her knowledge of the events which transpired on 5 August 1980. She recalled the victim's having asked her to "stay close enough by her that if anything happened that I could get her some help." Ms. Glenn then testified that she followed decedent out of the parking lot onto the highway at which point the witness saw a light blue Volkswagen square-back pull over behind them. Ms. Glenn went on to recount the events which she witnessed prior to and surrounding defendant's shooting of his wife. The State then introduced a prior statement made by Ms. Glenn for purposes of corroboration. Defendant objected to the introduction of the statement and now maintains that it was erroneously admitted for corroborative purposes since it did not, in fact, corroborate her testimony. Ms. Glenn's written statement included statements made to her by the victim which were not contained in Ms. Glenn's testimony. For example, according to the written statements, the victim had mentioned to Ms. Glenn that she and defendant had separated and also that he

had shot at her the day before. Defendant contends these statements were noncorroborative and highly prejudicial since they tended to establish premeditation and deliberation. We disagree.

It is well settled in this jurisdiction that prior consistent statements are admissible as corroboration to strengthen the credibility of a witness. *See generally* 1 Brandis, *supra* § 51 (2d rev. ed. 1982) and cases cited therein. However, such statements are admissible only if they do, in fact, corroborate the witness. *State v. Patterson*, 288 N.C. 553, 220 S.E. 2d 600 (1975), *death sentence vacated*, 428 U.S. 904 (1976); *State v. Bagley*, 229 N.C. 723, 51 S.E. 2d 298 (1949).

> If the previous statements in corroboration are generally consistent with the witness's testimony, slight variations between them will not render the statements inadmissible. Such variations affect only the credibility of the evidence which is always for the jury.

*State v. Britt*, 291 N.C. 528, 535, 231 S.E. 2d 644, 650 (1977). In the instant case, most of the variations noted by defendant are slight. None of the variations contradicted the witness's testimony. *See State v. Britt*, 291 N.C. 528, 231 S.E. 2d 650 (1977). Assuming, *arguendo*, that the reference to the defendant's having shot at the decedent amounted to more than a slight variation from the witness's testimony, its admissibility was not prejudicial error. First, the trial court gave a limiting instruction to the jury to consider the written statement only if and to the extent it corroborated her testimony. *Id.* Second, there was other evidence in the record of defendant's having shot at the decedent on the day before the killing, as well as other substantial evidence tending to show premeditation and deliberation. We cannot perceive how the admission of this one reference, if error, could possibly amount to error sufficiently prejudicial to warrant a new trial. Furthermore, defendant made only a broadside objection and did not specify which portions he deemed objectionable. Since it is "the duty of the objecting party to call to the attention of the trial court the objectionable part," broadside objections to corroborative testimony "will not generally be sustained if any portion of such testimony is competent." *Id.* at 536, 231 S.E. 2d at 650.

[16]   Defendant next challenges the admission of the following testimony of Wayne Joyner, his brother-in-law:

Q: Okay, subsequent to that time has the defendant Billy Raye Adcock tried to borrow a sum of money from you, specifically a short while before the 5th of August, 1980?

A: He came to my house one night and wanted to borrow thirty-five hundred dollars.

Q: Did he tell you why he wanted the thirty-five hundred dollars?

A: He said that he had helped some—

OBJECTION

OVERRULED

A: I think he had helped some school kids with some project of selling some candy or something, and he took the money and paid a bill, and did something with it, and needed it to pay this back for a few days until he could get the money together.

Defendant contends that this evidence had no relevance to any issue in the case and only served to prejudice him "by depicting him as a person who takes and spends charity money raised by school kids." We note at the outset that defendant made only a general objection to the evidence, and it is well settled that "[a] general objection, if overruled, is ordinarily no good, unless, on the face of the evidence, there is no purpose whatever for which it could have been admissible." 1 Brandis, *supra* § 27. It is not the responsibility of the trial court to predict the grounds of every objection made to testimony. It is the duty of counsel claiming error to "demonstrate not only that the ruling was in fact incorrect, but also that he provided the judge with a timely and specifically defined opportunity to rule correctly." *Id.* This the defendant has not done. The witness had previously testified, without objection, that defendant had borrowed sums of money from him on several occasions. There is nothing on the face of the above stated question which indicates its objectionability. Apparently, it was the witness's response to which defendant registers objection, rather than the form of the question. Even so, as pointed out, defendant gave no grounds for objection. Furthermore, he made no motion

to strike the response. When the question does not indicate the inadmissibility of the answer, defendant should move to strike as soon as the inadmissibility becomes known. Failure to so move constitutes a waiver. *State v. Battle*, 267 N.C. 513, 148 S.E. 2d 599 (1966).

Defendant next challenges the admissibility of the testimony of Debbie Starnes, and of Carolyn Neely. We have carefully reviewed the evidence of both of these witnesses. We note at the outset that defendant here, as with the Witness Joyner, made only general objections which were overruled; thus he did not effectively preserve the alleged errors for review. 1 Brandis, *supra*. Furthermore, our review of the challenged testimony reveals nothing which, if error at all, would permit us to hold that there is a "reasonable possibility" that, absent the alleged error, "a different result would have been reached at trial." G.S. 15A-1443.

Defendant finally submits that the court erred in permitting the following question asked by the prosecutor in cross-examining the witness Shirley Lloyd:

Q: Are those events, I am asking you, ma'am, if his mood was not consistent with the situation that he found himself in at that point?

OBJECTION

OVERRULED

Q: . . . from your observation.

A: Would you repeat it again very slowly.

Q: Was his mood consistent in other words was his depression, his crying, his sadness, didn't you find that consistent with the situation that he was in? His wife was dead. She had been shot, he was charged with first-degree murder in the shooting. The shooting was being charged as a capital offense. Now, wasn't his depression, wasn't his crying, wasn't his sadness consistent with that situation, consistent with the situation he found himself in?

Mr. Myrick: That calls for an opinion from her.

Court: Overruled. It has been asked repeatedly, you may answer.

A: Well, like I said, he didn't—I don't know why he was cry-
ing because he didn't say anything, maybe because he hadn't
seen any of us. I don't know.

Defendant argues that the court erred in permitting the pros-
ecutor to elicit opinion testimony from a lay witness. Assuming
that there was error, we can find no prejudice.

First and foremost, the witness never answered the question.
Second, the prosecutor had already asked virtually the same ques-
tion two or three times without objection. Thus the defendant
may be deemed to have waived his objection. *See* 1 Brandis,
*supra* § 30.

This assignment, including sub-parts A, B (which itself includ-
ed three different legal questions) and C is overruled.

[17] Defendant's eighth assignment concerns the prosecutor's
closing argument to the jury. Defendant challenges the following
statement made by the district attorney:

The fact that this defendant is up here being judged in this
Court indicates that he has acted improperly, has deviated,
has committed a law [sic] against people in North Carolina,
and against you as the people in this community.

Upon objection, the trial court immediately sustained the objec-
tion and instructed the jury to disregard the statement.

It is well settled that "argument of counsel must be left
largely to the control and discretion of the presiding judge and
that counsel must be allowed wide latitude in the argument of
hotly contested cases." *State v. Monk*, 286 N.C. 509, 515, 212 S.E.
2d 125, 131 (1975). Even so, the arguments of counsel are not
without limitations, and the "trial court has a duty, upon objec-
tion, to censor remarks not warranted by either the evidence of
the law, or remarks calculated to mislead or prejudice the jury."
*Id.* at 516, 212 S.E. 2d at 131. In the instant case, the statements
were clearly improper; nevertheless, the court promptly sustained
defendant's objection and instructed the jury to disregard the
statements. The impropriety of the prosecutor's remarks were
therefore cured. *State v. Pruitt*, 301 N.C. 683, 273 S.E. 2d 264
(1981); *State v. Sparrow*, 276 N.C. 499, 173 S.E. 2d 897 (1970), *cert.
denied*, 403 U.S. 940 (1971).

[18] By his ninth assignment of error, the defendant contends that the trial judge erred in charging the jury to consider evidence on the issue of insanity only after finding that the State had proven all of the elements of the crime charged. While we have indicated that the better practice in a case such as this would be to submit the issue of insanity first, we have also specifically held that, nothing else appearing, it does not constitute reversible error first to submit the elements of the crime and to submit the issue of insanity last. *State v. Cooper*, 286 N.C. 549, 213 S.E. 2d 305 (1975).

Even so, defendant sets forth several grounds for his assertion that the inverse order of the charge confused the jury as to the relationship between the instruction on insanity as a complete defense and the following instruction, given in connection with the charge on first-degree murder, on insanity as a mental condition tending to negate premeditation and deliberation:

> [I]nsanity, which by its form precludes the mental processes of premeditation and deliberation, is a defense to the charge of murder in the first degree. A defendant who does not have the mental capacity to form an intent to kill, or to premeditate and deliberate upon the killing due to mental illness or insanity, cannot be lawfully convicted of murder in the first degree.

The above-quoted instruction amounts to an instruction on diminished capacity. *See State v. Cooper*, 286 N.C. 549, 213 S.E. 2d 305. This Court has consistently held that a defendant is not entitled to such an instruction *e.g., State v. Jerrett*, 309 N.C. 239, 307 S.E. 2d 339 (1983); and, in fact, here the defendant does not challenge the inclusion *per se* of the instruction, since the inclusion was favorable to him. Despite, however, its favorable inclusion, defendant claims that the trial judge did not adequately distinguish between insanity as a complete defense and insanity as a diminished capacity defense. We disagree. Our reading of the charge reveals that the diminished capacity instruction was clearly related to the charge on premeditation and deliberation, and the charge on insanity as a complete defense came much later. The distinction between the two defenses was clear, and we cannot perceive in what way the jury could have been confused by the order of the instructions. This assignment is overruled.

[19] By his tenth assignment, defendant challenges the trial judge's instruction regarding the consequences of a verdict of not guilty by reason of insanity. Defendant contends that the instruction given led the jury to believe that upon a verdict of acquittal due to insanity, defendant would be released without any commitment proceeding. Thus, he argues, fear on the part of jurors that he would be set free prompted them to render a verdict of guilty.

The challenged portion of the charge is as follows:

I further instruct you, members of the jury, that when a defendant charged with a crime is found not guilty by reason of insanity, the trial court upon such additional hearing as is deemed necessary <u>may</u> direct that there be civil proceedings to determine whether the person should be involuntarily committed; and if the trial judge finds that there are reasonable grounds to believe that the defendant is mentally ill and is imminently dangerous to himself or others, and he determines upon appropriate findings of fact that it is appropriate to hold such involuntary commitment proceeding, he <u>may</u> order the defendant held in appropriate restraint pending these proceedings.

If it is determined in those proceedings that the defendant is mentally ill and is at that time dangerous to himself or others, the court will order the defendant to be confined and treated as an in-patient at a state mental health facility, and this involuntary commitment will continue subject to periodic review, until the Chief of medical services of that facility, and the court, after a full evidentiary hearing, determines that the defendant is not in need of continued hospitalization.

Defendant contends that the use of the word "may," as underscored, left the impression that the possibility of commitment proceedings was tenuous and thus the instruction "only reinforced the idea that the insanity defense is a loophole." Defendant relies on *State v. Hammonds*, 290 N.C. 1, 224 S.E. 2d 595 (1976), in which the Court addressed this identical issue and stated:

[U]pon request, a defendant who interposes a defense of insanity to a criminal charge is entitled to an instruction by the trial judge setting out in substance the commitment pro-

cedures outlined in G.S. 122-84.1 applicable to acquittal by reason of mental illness.

*Id.* at 15, 224 S.E. 2d at 604.

The Court elaborated further in *State v. Bundridge*, 294 N.C. 45, 239 S.E. 2d 811 (1978):

The gist of G.S. 122-84.1 is that the trial judge shall hold a defendant who is acquitted on the grounds of insanity for further hearings to determine whether he is imminently dangerous to himself or others.

*Id.* at 53, 239 S.E. 2d at 817.

Defendant places particular emphasis on the use of the word "shall" in the above-quoted statement. He essentially maintains that the court should have used "shall" in the instant case. We disagree. Notably, the statute upon which the *Bundridge* language rested, G.S. 122-84.1, used the word "shall" in setting out the procedure for conducting commitment hearings when a defendant is acquitted on grounds of mental illness. That statute, repealed in 1977 (c. 711, s. 33, effective 1 July 1978), provided as follows:

(a) Upon the acquittal of any criminal defendant on grounds of mental illness the trial court shall order the defendant held under appropriate restraint pending a hearing on the issue of whether the defendant is mentally ill and imminently dangerous to himself or others, as these terms are defined in Article 5A of this Chapter. The hearing shall be conducted in accordance with the provisions of G.S. 122-58.7 except that the hearing shall be held in a courtroom and need not be closed to the public. Evidence adduced at the trial of the defendant on the criminal charges on the issue of mental illness shall be admissible at the hearing. If the hearing cannot be conducted prior to the termination of the session of court in which the criminal trial was had, it shall be calendared in the district court in the same county within 10 days. If the court finds that the defendant-respondent is mentally ill and imminently dangerous to himself and others, it shall order him committed to a regional psychiatric facility designated by the Division of Mental Health and Mental Retardation Services for a period of not more than 90 days.

The defendant shall thereafter be considered as though he had been committed initially under the provisions of Article 5A of this Chapter. If the court finds that the defendant is not mentally ill and imminently dangerous to himself or others, it shall order his discharge.

(b) The provisions of this section supersede those provisions of G.S. 122-84 which prescribe the procedures to be used in the case of a defendant acquitted of a criminal charge by reason of mental illness.

In *State v. Harris*, 306 N.C. 724, 295 S.E. 2d 391 (1982), Justice Martin, speaking for the Court, further construed the requirement of *Hammonds*:

In the present case, defendant argues . . . that the court did not give the instructions in sufficient detail. We hold that the instructions substantially comply with the requirements of *Hammonds* and *Bundridge*. Judge Hobgood gave the jury the central meaning of the statute: that if defendant was acquitted by reason of insanity, he would not be released but would be held in custody until a hearing could be held to determine whether he should be confined to a state hospital. This was sufficient to remove any hesitancy of the jury in returning a verdict of not guilty by reason of insanity, engendered by a fear that by so doing they would be releasing the defendant at large in the community.

*Id.* at 727, 295 S.E. 2d at 393.

In addition to the holding in *State v. Harris* that substantial compliance is sufficient to meet the requirements of *Hammonds*, we note that, upon repeal of G.S. 122-84.1, the legislature in 1977 enacted G.S. 15A-1321 to govern procedures following acquittal by reason of insanity. Significantly, the 1977 statute used the word "may," instead of "shall."[1] The trial judge in this case instructed the jury in almost the precise language of the applicable statute, which is also the form of the Pattern Jury Instruction. The trial court accurately and adequately charged the jury regarding pro-

---

1. Effective 1 October 1983, the legislature amended G.S. § 15A-1321 and reinserted the word "shall" in place of "may" wherever the former occurred in the 1977 statute.

cedures upon acquittal on the ground of insanity. This assignment is without merit.

[20] Defendant also argues under this assignment that the following instruction was erroneous:

[I]f you are in doubt as to the insanity of the defendant, the defendant is presumed under the law to be sane, and so you would find the defendant guilty if he is otherwise guilty.

Defendant contends that this instruction, concededly in accord with the North Carolina Pattern Jury Instruction, improperly raised his burden of "satisfying" the jury as to his insanity to that of removing from their minds all doubt as to his sanity. While we must admit that the words used by the trial judge are arguably susceptible of different interpretations, we are constrained to hold that there was no prejudicial error in this portion of the charge as given.

First, the trial court amply and accurately charged the jury that the defendant's burden of proving insanity was only to "satisfy" them; the judge made it plain that the State's burden of proving the elements of the crime was "beyond a reasonable doubt," a standard of proof much more stringent than that placed upon defendant. Read contextually, then, assuming the challenged portion was ambiguous, it could not have so confused or misled the jury as to warrant the giving of a new trial in this case. *State v. Harris*, 223 N.C. 697, 28 S.E. 2d 232 (1943); *State v. Smith*, 221 N.C. 400, 20 S.E. 2d 360 (1942).

Secondly, we believe, when read contextually, the trial judge's statement is a correct statement of the law. It is well settled in this State that, in order to prove the elements of the crime charged, the prosecution is entitled to rely upon the presumption of sanity. *State v. Harris*, 223 N.C. 697, 28 S.E. 2d 232. Nothing else appearing, then, and assuming that proof is made out of the other elements of the crime, the defendant would be guilty. The burden of proving to the jury his insanity rests on the defendant and he must prove insanity to the satisfaction of the jury. *Id.* If they are not "satisfied," he has not met his burden and the presumption prevails. *Id.* As stated in *State v. Creech*, 229 N.C. 662, 51 S.E. 2d 348 (1949):

[T]he whole matter in respect of the burden of proof and the burden of satisfaction, where insanity or mental debility is interposed as a defense, is thoroughly discussed in the case of *S. v. Harris*, [223 N.C. 697, 28 S.E. 2d 232], and it would only be a work of supererogation to restate it here. The presumption that the accused was sane and responsible for his acts persists until the contrary is shown to the satisfaction of the jury. Therefore, if the jury are left *in doubt* as to the sanity or responsibility of the accused, the presumption prevails.

*Id.* at 674, 51 S.E. 2d at 357. (Emphasis added.) *State v. Caddell,* 287 N.C. 266, 215 S.E. 2d 348 (1975).

Obviously, the phrase "in doubt" as used in the Pattern Jury Instruction and here in the trial judge's charge originated in the above-quoted language, later quoted with approval in *State v. Caddell.* "In doubt," as so used, in our opinion, means essentially the same as "uncertain," *see* Webster's Third New International Dictionary, 679 (1976), or in this case, "not satisfied." As used, and especially in the context of the trial judge's ample explanation of the defendant's lesser burden, we do not believe that the use of the phrase "in doubt" conveyed to the jury the message that defendant's burden had suddenly been raised to that of "beyond a reasonable doubt."

We believe, however, that in the future the better practice would be to substitute the term "not satisfied" in lieu of "in doubt." The former phrase comports with the established terminology in this area of the law and certainly erases any hint of ambiguity concerning defendant's burden of proving his insanity.

[21]   By his assignment of error No. 11 defendant contends that the trial judge erred by failing to instruct the jury on the weight to be given circumstantial evidence.

Defendant in apt time, in writing, requested the following instruction:

The State relies in part upon what is known as circumstantial evidence. Circumstantial evidence is evidence of facts from which other facts may logically and reasonably be deduced.

Circumstantial evidence may be of two kinds. The first kind consists of a number of separate links, each link depend-

ing upon the other, and the series of links connecting to or from a chain. In such a case each link must be complete in itself and the resulting chain cannot be stronger than its weakest link. If you have a reasonable doubt as to any one or several of the links, then the chain is broken, and you would return a verdict of not guilty. The State must prove to you beyond a reasonable doubt each and every link of the chain of circumstances upon which it relies in order for you to return a verdict of guilty as charged.

The second kind of circumstantial evidence consists of a number of independent circumstances, all pointing in the same direction, similar to the strands of a rope. Although no one of the strands or circumstances may be sufficient in itself, all of them together may be strong enough to prove the guilt of the defendant, or, they may establish his innocence or raise in your minds a reasonable doubt as to his guilt.

Circumstantial evidence is recognized and accepted proof in a court of law. However, before you may rely upon circumstantial evidence to find the defendant guilty you must be satisfied beyond a reasonable doubt that not only is the circumstantial evidence relied upon by the State consistent with the defendant's being guilty but that it is inconsistent with his being innocent.

"Direct evidence is that which is immediately applied to the fact to be proved, while circumstantial evidence is that which is indirectly applied by means of circumstances from which the existence of the principal fact may reasonably be deduced or inferred." 1 Brandis, *supra*, § 76, p. 284.

In 2 Brandis, *supra*, § 210, p. 155, we find the following language:

Circumstantial evidence is recognized as "essential and, when properly understood and applied, highly satisfactory in matters of the gravest moment," but a conviction may not be based upon it unless the circumstances point to guilt and exclude to a moral certainty every reasonable hypothesis except that of guilt. Upon request, the judge should instruct

the jury along this "moral certainty" line, but the instruction need follow no set formula.

(Footnotes omitted.)

The above-quoted statement from Brandis is as accurate a statement as could be made of this unsettled area of the law. Unquestionably circumstantial evidence is "essential and, when properly understood and applied, highly satisfactory in matters of the gravest moment." *Id. State v. Cash*, 219 N.C. 818, 15 S.E. 2d 277 (1941). In our opinion the language that a conviction cannot be based upon this type of evidence "unless the circumstances point to guilt and exclude to a moral certainty every reasonable hypothesis except that of guilt" is merely another way of saying that the jurors must be convinced of the defendant's guilt beyond a reasonable doubt. The quoted language sets forth the same measure of proof as contained in our recognized and approved instruction on reasonable doubt. However, whether the trial judge is required to give the "moral certainty" or "reasonable hypothesis" instruction when aptly requested is a beclouded area of the law in this jurisdiction. We find cases which hold that in criminal cases in which the State relies wholly or in part on circumstantial evidence it is sufficient to give the approved reasonable doubt charge. *State v. Adams*, 138 N.C. 688, 50 S.E. 765 (1905). Conversely, we find authority which tends to support defendant's position that it is error for the trial judge to refuse to give the "moral certainty" instruction when the State relies on circumstantial evidence and defendant aptly requests such instruction. *State v. Johnson*, 294 N.C. 288, 239 S.E. 2d 829 (1978); *State v. Branch*, 288 N.C. 514, 220 S.E. 2d 495 (1975), *cert. denied*, 433 U.S. 907 (1977); *State v. Willoughby*, 180 N.C. 676, 103 S.E. 903 (1920). We therefore deem it necessary to review these conflicting lines of authority.

In *State v. Adams*, 138 N.C. 688, 50 S.E. 765 (1905), the defendant was charged with first-degree murder. At trial, defendant, *inter alia*, requested the court to give the following instruction:

1. When circumstantial evidence is relied upon to convict, it must be clear, convincing, and conclusive in its connection and combination, and must exclude all rational doubt as to the defendant's guilt. And, therefore, if the evidence as to

the footprints in this case is not clear, satisfactory, convincing, and conclusive to the minds of the jury — in other words, if such evidence does not point with moral certainty to the guilt of the defendant and to that of no other person — then the jury should acquit the defendant, unless the whole evidence in the case, after leaving out of consideration the evidence bearing upon the footprints, is sufficient to satisfy fully the minds of the jury as to the guilt of the defendant.

*Id.* at 691-92, 50 S.E. at 766.

The trial judge declined to give the instruction and his failure to do so was one of defendant's assignments of error. This Court, finding no error in the trial judge's rulings, stated:

There is no particular formula by which the court must charge the jury upon the intensity of proof. "No set of words is required by the law in regard to the force of circumstantial evidence. All that the law requires is that the jury shall be clearly instructed, that unless after due consideration of the evidence they are 'fully satisfied' or 'entirely convinced' or 'satisfied beyond a reasonable doubt' of the guilt of the defendant, it is their duty to acquit, and every attempt on the part of the courts to lay down a 'formula' for the instruction of the jury, by which to 'gauge' the degrees of conviction, has resulted in no good." We reproduce these words from the opinion delivered by *Pearson, C.J.,* in *S. v. Parker,* 61 N.C., 473, as they present in a clear and forcible manner the true principle of law upon the subject. The expressions we sometimes find in the books as to the degree of proof required for a conviction are not formulas prescribed by the law, but mere illustrations. *S. v. Sears,* 61 N.C., 146; *S. v. Knox, ibid,* 312; *S. v. Norwood,* 74 N.C., 247. The law requires only that the jury shall be fully satisfied of the truth of the charge, due regard being had to the presumption of innocence and to the consequent rule as to the burden of proof. *S. v. Knox, supra.* The presiding judge may select, from the various phrases which have been used, any one that he may think will correctly inform the jury of the doctrine of reasonable doubt, or he may use his own form of expression for that purpose — provided, always, the jury are made to understand that they must be fully satisfied of the guilt of

the defendant before they can convict him. In *S. v. Gee*, 92 N.C., 761, where the court below had refused to charge according to one of these supposed formulas, and told the jury that it was not a rule of law, but only an illustration, and intended to impress upon the jury the idea that they should be convinced beyond a reasonable doubt of the defendant's guilt, the Court, by *Smith, J.*, said: "We do not see in the charge, or in the manner of submitting the case to the jury, any error of which the defendant has a right to complain." If the judge charges the jury in substance that the law presumes the defendant to be innocent, and the burden is upon the State to show his guilt, and that upon all of the testimony they must be fully satisfied of his guilt, he has done all that the law requires of him, the manner in which it shall be done being left to his sound discretion, to be exercised in view of the facts and circumstances of the particular case.

*Id.* at 696-97, 50 S.E. at 767-68.

In *State v. Ewing*, 227 N.C. 535, 42 S.E. 2d 676 (1947), we find the following statements:

[The rule as to the intensity of proof to convict] is, and has been from time almost immemorial, that to justify the conviction the jury must be convinced beyond a reasonable doubt of the guilt of the accused, and it applies no matter what mode of proof is involved. The angle of approach and review of circumstantial evidence is necessarily somewhat different. Nevertheless, statements to the effect that the evidence should "exclude a rational doubt as to the prisoner's guilt", or "exclude every rational hypothesis of innocence" are simply converse statements of the rule of reasonable doubt, universally applied, and do not handicap circumstantial evidence as an instrument of proof with the necessity of doing more. When reasonable inferences may be drawn from them, pointing to defendant's guilt, it is a matter for the jury to decide whether the facts taken singly or in combination produce in their minds the requisite moral conviction beyond a reasonable doubt.

*Id.* at 540, 42 S.E. 2d at 679 (citations omitted).

In *State v. Shook,* 224 N.C. 728, 32 S.E. 2d 329 (1944), the trial court instructed with respect to circumstantial evidence as follows:

> "The State relies in this case upon what is known as circumstantial evidence, which is the proof of various facts or circumstances which usually attend the main fact in dispute, and therefore, tends to prove its existence or to sustain by their consistencies the hypothesis of claim. Circumstantial evidence consists in reasoning from facts, which are known or proved, to establish such facts which are conjectured to exist. This must be proven to you, and beyond a reasonable doubt by the State, before this man can be found guilty."

*Id.* at 730, 32 S.E. 2d at 330. Finding these instructions to be adequate, this Court reasoned:

> The instruction regarding circumstantial evidence quoted in full in the statement, while not sufficiently clear and exact to be approved as a model, does not disclose prejudicial error—at least the assignment of error made by the appellant is untenable. The objection is that the judge did not add to the instruction given that, in order to justify a verdict of guilty, the circumstantial evidence must "exclude every reasonable hypothesis of innocence." That, indeed, it must do; but after all, the convincing effect of circumstantial evidence on the mind of the jury is measured by the same standard of intensity required of any other evidence—the jury must be convinced beyond a reasonable doubt as to every element of the crime before they find the defendant guilty of it, whether the evidence is wholly circumstantial, only partly so, or entirely what we sometimes refer to as direct. No set formula is required to convey to the jury this fixed principle relating to the degree of proof required for conviction.

> The instruction adopts the formula most often used and to which we sooner or later all refer—proof beyond a reasonable doubt.

*Id.* at 731, 32 S.E. 2d at 331. *Accord State v. Wall,* 218 N.C. 566, 11 S.E. 2d 880 (1940); *State v. Frady,* 172 N.C. 978, 90 S.E. 802 (1916); *State v. Lane,* 166 N.C. 333, 81 S.E. 620 (1914); *State v. Neville,* 157 N.C. 591, 72 S.E. 798 (1911).

Beginning with *State v. Willoughby,* 180 N.C. 676, 103 S.E. 903 (1920), this Court without explanation or discussion began to use language which seems to modify the rule announced in *Adams* and its progeny by engrafting a rule that if defendant aptly requested it the court *should* instruct on the "moral certainty" or "reasonable hypothesis" rule. In *Willoughby,* we find this terse statement by Allen, J., speaking for the Court:

> It may have been well to add that the circumstances found by the jury to exist must exclude every other reasonable conclusion except the guilt of the defendant, but the failure to do so is not reversible error *in the absence of a special request to so instruct the jury.*

*Id.* at 678, 103 S.E. at 904 (emphasis added).

Defendant was charged with conspiracy to commit larceny in *State v. Bennett,* 237 N.C. 749, 76 S.E. 2d 42 (1953). One of his assignments was the failure of the trial judge to charge on circumstantial evidence. Justice Ervin disposed of this assignment of error as follows:

> Since the State's case was based for the most part on direct evidence sufficient in itself to warrant conviction, the trial judge did not err in failing to give the jury specific instructions on circumstantial evidence. *The defendant did not request any such instructions at trial.*

*Id.* at 753, 76 S.E. 2d at 44 (emphasis added) (citations omitted).

Defendants were convicted of larceny and receiving stolen property in *State v. Warren,* 228 N.C. 22, 44 S.E. 2d 207 (1947). One of their assignments was the failure of the judge to define circumstantial evidence and to instruct the jury on this question. Justice Denny, speaking for the Court, stated:

> *In the absence of a request to do so,* the failure of the court to instruct the jury regarding circumstantial evidence, or as to what such evidence should show, will not be held for reversible error, if the charge is correct in all other respects as to the burden and measure of proof.

*Id.* at 24, 44 S.E. 2d at 209 (emphasis added).

In *State v. Branch,* 288 N.C. 514, 220 S.E. 2d 495 (1975), *cert. denied,* 433 U.S. 907 (1977), defendants were convicted of being accessories before the fact to murder and for conspiracy to commit

murder. The Court rejected Defendant Branch's challenge to the charge on circumstantial evidence and held that the charge was sufficient. The Court reiterated the *Willoughby* holding: "In the absence of a prior specific request for the charge now submitted by defendant, it is manifest that no reversible error was committed." *Id.* at 540, 220 S.E. 2d at 512-13.

In *State v. Johnson,* 294 N.C. 288, 239 S.E. 2d 829 (1978), defendant was convicted of first-degree murder and on appeal one of his assignments of error was based on the failure of the court to specially instruct on the quantum of proof to be used in reviewing circumstantial evidence. There the Court stated:

> Although defendant tendered no request for special instructions on circumstantial evidence, he argues that the court should be required to give such an instruction absent a request in cases in which the State relies totally on circumstantial evidence. We recently held, however, that "A general and correct charge as to the intensity or quantum of proof when the State relies wholly or partly on circumstantial evidence is adequate unless the defendant tenders request for a charge on the intensity of proof required for such evidence." *State v. Beach,* 283 N.C. 261, 272, 196 S.E. 2d 214, 221-222 (1973).

*Id.* at 294, 239 S.E. 2d at 832. *Accord, State v. Coward,* 296 N.C. 719, 252 S.E. 2d 712 (1979); *State v. Beach,* 283 N.C. 261, 196 S.E. 2d 214 (1973).

It is of interest to note that there is not a positive statement in any of these latter cases to the effect that the judge must give the moral certainty charge when requested to do so or that his failure to give the charge would result in prejudicial error. Neither do we find a case where the court granted a new trial because of the failure to so charge.

Our research discloses that both state and federal courts are increasingly abandoning the requirement that there be special instructions on proof of guilt by circumstantial evidence.

The United States Supreme Court considered this question in *Holland v. United States,* 348 U.S. 121 (1954). There the defendant was convicted of income tax evasion solely upon circumstantial evidence. On appeal he assigned as error the court's failure to instruct specifically on circumstantial evidence. Finding no error the Court speaking through Justice Clark, in part stated:

> The petitioners assail the refusal of the trial judge to instruct that where the Government's evidence is circumstantial it must be such as to exclude every reasonable hypothesis other than that of guilt. There is some support for this type of instruction in the lower court decisions, *Garst v. United States* (CA4th Va) 180 F 339, 343; *Anderson v. United States* (CA5th Tex) 30 F2d 485-487; *Stutz v. United States* (CA5th Fla) 47 F2d 1029, 1030; *Hanson v. United States* (CA6th Ohio) 208 F2d 914, 916, but the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect.

*Id.* at 139-40.

The federal circuit courts have consistently followed the *Holland* rule. *United States v. Becker*, 62 F. 2d 1007 (2d Cir. 1933); *United States v. Austin-Bagley Corp.*, 31 F. 2d 229 (2d Cir.), *cert. denied*, 279 U.S. 863 (1929); *Taglianetti v. United States*, 398 F. 2d 558 (1st Cir. 1968), *aff'd per curiam*, 394 U.S. 316 (1969); *United States v. Warren*, 453 F. 2d 738 (2d Cir.), *cert. denied*, 406 U.S. 944 (1972); *United States v. Evans*, 239 F. Supp. 554 (E.D. Pa. 1965), *aff'd*, 359 F. 2d 776 (3d Cir.), *cert. denied*, 385 U.S. 863 (1966); *United States v. Johnson*, 337 F. 2d 180 (4th Cir. 1964), *cert. denied*, 385 U.S. 846 (1966); *Sowers v. United States*, 255 F. 2d 239 (5th Cir. 1958); *Continental Baking Company v. United States*, 281 F. 2d 137 (6th Cir. 1960); *United States v. Atnip*, 374 F. 2d 720 (7th Cir. 1967); *United States v. Francisco*, 410 F. 2d 1283 (8th Cir. 1969); *Urban v. United States*, 237 F. 2d 379 (9th Cir. 1956); *United States v. Martine*, 442 F. 2d 1022 (10th Cir. 1971); *Davis v. United States*, 433 F. 2d 1222, 1226 at n. 5 (D.C. Cir. 1970).

We think the language of Judge Learned Hand in *United States v. Becker*, 62 F. 2d 1007, is persuasive. We quote from that opinion:

> The judge failed to charge the jury as to circumstantial evidence, contenting himself with an entirely neutral statement of the opposed contentions of the parties, though he had been asked to say that such evidence was enough only when it foreclosed the hypothesis of innocence. He had with ample elaboration told them that they must be satisfied beyond fair doubt of the defendant's guilt, and that in our judgment was enough, though some courts have held other-

wise. [Citations omitted.] The requirement seems to us a refinement which only serves to confuse laymen into supposing that they should use circumstantial evidence otherwise than testimonial. All conclusions have implicit major premises drawn from common knowledge; the truth of testimony depends as much upon these as do inferences from events. A jury tests a witness's credibility by using their experience in the past as to similar utterances of persons in a like position. That is precisely the same mental process as when they infer from an object what has been its past history, or from an event what must have preceded it. All that can be asked is that the importance of the result to the accused shall demand a corresponding certainty of his guilt; and this is commonly and adequately covered by telling them that the conclusion shall be free from fair doubt. To elaborate this into an inexorable ritual, or to articulate it for different situations, is more likely to impede, than to promote, their inquiry.

*Id.* at 1010.

Many of our sister states have likewise abandoned the rule requiring a special charge on circumstantial evidence and adopted the *Holland* rationale. *Allen v. State,* 420 P. 2d 465 (Alaska 1966); *State v. Harvill,* 106 Ariz. 386, 476 P. 2d 841 (1970); *Murray v. State,* 249 Ark. 887, 462 S.W. 2d 438 (1971); *People v. Bennett,* 183 Colo. 125, 515 P. 2d 466 (1973); *Henry v. State,* 298 A. 2d 327 (Del. Supr. 1972); *State v. Wilkins,* 215 Kan. 145, 523 P. 2d 728 (1974); *Wolf v. Commonwealth,* 214 Ky. 544, 283 S.W. 385 (1926); *State v. Jackson,* 331 A. 2d 361 (Me. 1975); *Metz v. State,* 9 Md. App. 15, 262 A. 2d 331 (1970); *Anderson v. State,* 86 Nev. 829, 477 P. 2d 595 (1970); *State v. Ray,* 43 N.J. 19, 202 A. 2d 425 (1964); and *State v. Murphy,* 113 R.I. 565, 323 A. 2d 561 (1974).

In his treatise on evidence Professor Wigmore discussed the probative value of direct and circumstantial evidence as follows:

The rules of Admissibility have nothing to say concerning the weight of evidence when once admitted. * * * Indeed, it can be said that there are no rules, in our system of evidence, prescribing for the jury the precise effect of any general or special class of evidence. So far as logic and psychology assist us, their conclusions show that it is out of the question to make a general assertion ascribing greater weight to one class or the other.

1A Wigmore on Evidence § 26 (Tillers rev. 1983).

In instant case the trial judge correctly and fully charged on the theory of reasonable doubt and the jurors were told that if they had a reasonable doubt as to defendant's guilt they would return a verdict of not guilty. We are of the opinion that the reasonable doubt instruction and the "moral certainty" circumstantial evidence instruction encompass the same measure of proof. Therefore, recognizing that the purpose of a charge to the jury is to clarify the issues and apply the law to the evidence, we conclude that the giving of the "moral certainty" or the "reasonable hypothesis" instruction in addition to the reasonable doubt instruction would tend to confuse the jury by requiring them to engage in an unnecessary and repetitious application of the same measures of proof to the evidence in the case.

We hold that an instruction on circumstantial evidence to the effect that a conviction may not be based upon it unless the circumstances point to guilt and exclude to moral certainty every reasonable hypothesis except that of guilt is unnecessary when a correct instruction on reasonable doubt is given. We therefore expressly overrule any decisions of this Court to the extent they hold otherwise.

For the benefit of the bench and bar we would suggest that in any case based in part or wholly on circumstantial evidence that the following language be included in the charge:

There are two types of evidence from which you may find the truth as to the facts of a case—direct and circumstantial evidence. Direct evidence is the testimony of one who asserts actual knowledge of a fact, such as an eyewitness; circumstantial evidence is proof of a chain of facts and circumstances indicating the guilt or innocence of a defendant. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence than of direct evidence. You should weigh all the evidence in the case. After weighing all the evidence, if you are not convinced of the guilt of the defendant beyond a reasonable doubt, you must find him not guilty.

1 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 15.02 (3d Ed. 1977).

For reasons stated, we hold that the trial judge correctly refused to give the defendant's tendered instructions on circumstantial evidence.

As a part of this assignment of error the defendant also argues that the trial judge failed to sufficiently summarize his evidence. We do not believe that this assignment of error merits extended discussion. Suffice it to say that our examination of this record reveals that the trial judge, without expressing an opinion as to whether any fact had been proved, fully stated the contentions of defendant and the State so as to declare and explain the law arising on the evidence. G.S. 15A-1232.

[22] Defendant finally assigns as error the trial judge's ruling sustaining the State's objection to the introduction of an affidavit of Carolyn Neely at a post-conviction hearing for appropriate relief. Defendant's motion for appropriate relief was based in part on grounds of newly discovered evidence, and the affidavit was offered in support of those grounds.

In an evidentiary hearing for appropriate relief where the judge sits without a jury the moving party has the burden of proving by the preponderance of the evidence every fact to support his motion. G.S. 15A-1420(c)(5). The court must make findings of fact in support of its ruling. G.S. 15A-1420(c)(4). In hearings before a judge sitting without a jury "adherence to the rudimentary rules of evidence is desirable even in preliminary *voir dire* hearings. Such adherence invites confidence in the trial judge's findings." *State v. Davis*, 290 N.C. 511, 542, 227 S.E. 2d 97, 116 (1976).

The affidavit of Carolyn Neely offered by defendant was clearly hearsay and inadmissible. *State v. Spillars*, 280 N.C. 341, 185 S.E. 2d 881 (1972).

We note that even had the trial judge erred in his ruling on the basis that the evidence was hearsay, the affidavit would not have furnished a basis for a new trial on the theory of newly discovered evidence.

This court has held that the prerequisites for a new trial on the grounds of newly discovered evidence include the following:

. . .

6. That it does not tend only to contradict a former witness or to impeach or to discredit him. [citations omitted].

7. That it is of such a nature as to show that on another trial a different result will probably be reached and that the right will prevail. [citations omitted].

*State v. Cronin,* 299 N.C. 229, 243, 262 S.E. 2d 277, 286 (1980). Defendant failed to comply with either of these prerequisites.

This assignment of error is without merit.

From our examination of this entire record, we conclude that defendant received a fair trial free from prejudicial error.

No error.

Justice EXUM dissenting.

The nub of this case is the question of defendant's insanity. Insanity constitutes his entire defense. It is a close question on this record. Defendant's evidence of insanity is substantial as is the state's rebuttal. Errors, therefore, relating to this defense must be carefully examined.

I believe it was reversible error for the trial court to instruct the jury over defendant's objection regarding the permissive, but not mandated, commitment procedures which may have followed an acquittal on the grounds of insanity. As the majority correctly notes, the former statute required the trial judge to hold further hearings to determine whether an insanity acquittee should nevertheless be committed. The statute in effect when this case was tried permitted the court to conduct such a hearing but did not require it.

Defendant requested that these instructions on the permissive commitment procedures not be given. The trial court denied the request. I think it should have been honored. Even with the mandatory commitment procedure statute which previously existed, our rule was that a defendant who raised an insanity defense was entitled to have the jury instructed in accordance with the substance of the statute *upon his request. State v. Bundridge,* 294 N.C. 45, 239 S.E. 2d 811 (1978); *State v. Hammonds,* 290 N.C. 1, 224 S.E. 2d 595 (1976). In *Hammonds* this Court considered at length the rule in other jurisdictions regarding this kind of instruction. We noted that only one state required the instructions in the absence of defendant's request. Several states adopted the rule that defendant, upon request, was entitled to the instruction. One jurisdiction had held that a defendant was enti-

tled to the instruction "unless it affirmatively appears that defendant does *not* want such an instruction." *Hammonds,* 290 N.C. at 14, 224 S.E. 2d at 603 (emphasis original). So far as is revealed in *Hammonds,* no jurisdiction says the instruction ought to be given over the express objection of the defendant. Indeed, a majority of jurisdictions prohibit this kind of instruction altogether. Note, 13 Wake Forest L. Rev. 201 (1977). We have held that in the absence of a request or objection it is not error to tell the jury that a commitment hearing *will* be held if a defendant is acquitted by reason of insanity. *State v. Harris,* 306 N.C. 724, 295 S.E. 2d 391 (1982).

Under the former statute, a commitment hearing was required. The purpose of so instructing the jury was to advise them that an acquittal on the ground of insanity did not necessarily mean that defendant would be released altogether and that a hearing to determine this question would *inevitably* be held. *Hammonds,* 290 N.C. at 15, 224 S.E. 2d at 603-04. Under the statute governing this case, it was discretionary with the trial judge as to whether a commitment hearing following an insanity acquittal would even be held. This statute provided much less assurance to the jury that defendant would be otherwise committed, even if he was acquitted on the ground of insanity, than did the former statute. It is understandable why a defendant, like defendant here, might not wish the jury to be instructed regarding permissive, as opposed to mandatory, commitment procedures.

I think it is reversible error to instruct on these procedures if defendant requests, as he did here, that this instruction not be given.

I also believe it was reversible error for the trial court to instruct the jury on the insanity issue as follows:

[I]f you are in doubt as to the insanity of the defendant, the defendant is presumed under the law to be sane, and so you would find the defendant guilty if he is otherwise guilty.

The burden is on defendant simply "to satisfy" the jury of his insanity. We have said that "to satisfy" the jury is "a standard no greater and at the same time one not significantly less than persuasion by a preponderance of the evidence." *State v. Hankerson,* 288 N.C. 632, 648, 220 S.E. 2d 575, 587 (1975), *rev'd on other grounds,* 432 U.S. 233 (1977). The defendant's burden of persuasion on an insanity issue is no greater, therefore, than a civil

litigant's burden in a civil case would be, *i.e.*, to persuade the jury by a preponderance of, or greater weight of, the evidence. Under this standard, a litigant is only required to "tip the scales" in the litigant's favor. The litigant with this burden must persuade the jury only that it is "more likely than not" that the facts in his favor are true. N.C. Pattern Jury Instructions—Civil 101.10. Thus a defendant claiming an insanity defense need satisfy the jury only that it is more likely than not that he is insane. A jury could be so satisfied and yet have some "doubt" about the question. Essentially the jury is dealing in probabilities, not certainties. The jury could believe it more probable, or more likely, than not that defendant was insane and yet still have a doubt about it.